# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 95-CC-00595-SCT

*RAY WARREN, DAVID GRAHAM, JOYCE
THORNHILL, RALPH BARNES, GEORGE CATO
AND RICKY DEAR*

*v.*

*THE MISSISSIPPI WORKERS' COMPENSATION
COMMISSION, CLAIRE M. PORTER, BEVERLY
HOGAN AND JOHN NIPPER*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/09/95 |
| TRIAL JUDGE: | HON. DENISE SWEET OWENS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | LARRY NORRIS |
| | F. MARVIN NORRIS |
| | JOHN M. DEAKLE |
| ATTORNEYS FOR APPELLEES: | FRED KRUTZ, III |
| | JANET D. McMURTRAY |
| | S. KAY FREEMAN |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | AFFIRMED - 10/9/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/30/97 |

**BEFORE PRATHER, P.J., BANKS AND SMITH, JJ.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. In this case we consider the constitutionality of the Mississippi Workers' Compensation scheme, which is often alleged to be characterized by long delays in the resolution of claims. Because the plaintiffs have not demonstrated in this record that these delays cause any constitutional injury, we affirm the trial court's denial of the relief sought, and accordingly decline to strike down the Workers' Compensation scheme.

## I.

¶2. On November 19, 1993, six plaintiffs filed suit in the Hinds County Chancery Court alleging that

the Mississippi Workers' Compensation Act was unconstitutional. Their final amended complaint, which was filed on August 10, 1994, alleged six causes of action: (1) the workers compensation scheme deprived the plaintiffs and others similarly situated of their unspecified liberty and property interests without due process of law;[(1)] (2) the defendants' use of outmoded and obsolete means of administering the Act causes inordinately slow procedures for the plaintiffs and others similarly situated, violating their rights to justice without delay; (3) the Workers' Compensation Enabling Act is unconstitutional because it provides for commissioners who are prejudiced; (4) the Workers' Compensation Act is unconstitutional because it has delays built into the statute which provide for several rounds of appeal that take six to seven years to complete; (5) the Commission and its members exhibited negligence in their supervision and management of the workers' compensation cases that come before it by allowing the cases to drag on for an inordinate period of time, by not streamlining their procedures, and by allowing employers and carriers to impede the progress and resolution of the cases; and (6) the workers' compensation scheme is unconstitutional because it limits the claimant's attorney fees, but does not limit the employer and carrier attorney fees.

¶3. The complaint names as defendants the Mississippi Workers' Compensation Commission and its three full-time members, Claire Porter, Beverly Hogan, and John Nipper. The members were sued in their official and individual capacities. The plaintiffs sought relief by way of a declaration that the Mississippi Workers' Compensation Act was unconstitutional and therefore null and void, an injunction against any further action of the Mississippi Workers' Compensation Commission, and the restoration of plaintiffs' common law right to sue in tort. The final amended complaint does not seek monetary damages.

¶4. The plaintiffs had the following individual experiences with their workers' compensation claims:

(a) Ray Warren was injured while working as a logger on March 20, 1989 and was rendered a paraplegic. According to the appellant's brief, he filed his Petition to Controvert on August 3, 1989. After five years in the system, he was awarded some kind of benefits in June 1994, but at the time of the instant briefing, he had not received any workers' compensation benefits or medical treatment. He also has a separate case that is currently pending in this Court. In the meantime, he has allegedly lived in poverty. Mr. Warren did not testify at the trial in this case.

(b) David Graham injured his back while delivering a sofa to a customer on May 22, 1985. During the litigation of his workers' compensation claim, he has lived on charity and relatives, and he has lost his automobile, furniture, and house. He has been receiving some compensation intermittently, but has had problems getting his medical treatment covered. His workers' compensation claim is presently pending before this Court.

(c) Ricky Dale Dear was injured on the job in September 1988. Dear has received workers' compensation benefits intermittently since then, but has had to live on food stamps, borrow money from friends, and live in a camper with his wife and children without electricity or hot water. He pawned his television and VCR and had his car and guns repossessed. He ultimately settled his case in September 1991 because he realized that he could not wait the projected four to six years that his lawyer estimated would be required for the full adjudication of his claim.

(d) Joyce Thornhill injured her back on March 7, 1987 while lifting a patient at a nursing home. In the two years that passed while she awaited the approval of her employer for surgery, she

sustained permanent nerve root damages because of the delay. At the time of the trial, she was still trying to get her medical expenses covered, but she had been receiving workers' compensation benefits since her injury.

(e) Ralph Barnes was injured on March 3, 1987 while lifting lumber. His benefits were litigated through June 1994. During the four-month period that Barnes was without any income at all, he lived on the charity of his relatives. While he did receive varying amounts of benefits until the final disposition of his case in this Court in June 1994, each stage of appeal produced dramatically different awards.

(f) George Cato injured his back on December 6, 1990. His Petition to Controvert was filed on August 29, 1991, but he ultimately settled his claim because he could not afford to pursue it. He asserts that he was physically unable to attend trial and testify.

¶5. After some discovery, the chancery court held a trial on November 16-17, 1994. The six plaintiffs testified about their injuries and their experiences with their claims. The plaintiffs further called Bill Waller Jr. as an expert witness in workers' compensation practice. Although Mr. Waller had no knowledge outside of the complaint about the delays involved in these six particular plaintiffs' cases, he testified about his experience in representing claimants. He stated that it takes a minimum of nine months to a year after maximum medical recovery has been reached to get an initial hearing on a controverted claim.[2] He further testified that the administrative law judge's opinion does not receive any deference in subsequent review by the full Commission, and can be essentially relitigated by affidavit at the Commission level. The Commission is also entitled to remand matters back to administrative law judges when desirable. Mr. Waller opined that scheduling conflicts and contingencies contribute to the delay in the resolution of these cases.

¶6. Mr. Waller further testified that it was difficult to obtain emergency relief, such as in cases where benefits or medical payments have been totally cut off, because of the high case load that the administrative law judges have. He stated that, often, judges will take the position that a regular hearing on the merits will take place within two or three months, and thus the are reluctant to grant emergency relief.

¶7. Mr. Waller also stated that the length of time typically required to resolve controversies always made a negative impact on a client's willingness to settle a case for less than the client would if the client could count on a faster adjudication of the claim. He believed that the workers' compensation procedures were more protracted than litigation in the regular tort system. He also testified that, in his opinion, the statutory requirement under Miss. Code Ann. § 71-3-85, that the Commission comprise one member who had previously represented employers, and one member who had previously represented employees, was "automatically" an impartial system. Finally, Mr. Waller believed that the statutory ceiling on attorneys' fees, which is 25% of an award of benefits, chilled attorneys' willingness to represent claimants.

¶8. On cross-examination, Mr. Waller admitted that few cases were ever controverted, and even fewer were ever appealed all the way to the Supreme Court. He further stated that, in his opinion, the members of the Commission at the time of trial were not only fair and impartial, but were trying to speed the process up. Indeed, he stated that, in his experiences of over 300 cases before the Commission, more than half of their decisions had been unanimous.

¶9. The defendant-Commission brought their own expert witness, Horace Brewer, an administrative law judge with the Commission from 1979 to 1984 who has since been in private practice that is exclusively devoted to workers' compensation cases.[3] Mr. Brewer testified that while the system proceeded quite slowly through the 1980s, there had been a number of systemic changes that speeded the system up, including the acquisition of computers and the adoption of procedural rules in September 1993. The procedural changes allowed lawyers to conduct their cases in a manner that speeded things along, like completing their discovery so as to force the opponent to file his pre-trial statement. In Mr. Brewer's opinion, the time required to complete a case had been cut in half since he first began practicing law in 1967.

¶10. On cross-examination, Mr. Brewer complained that circuit courts despised workers' compensation cases and took them under advisement for a long time, often over a year. He further stated that it took a minimum of two years for a case that had been appealed to the Supreme Court to be resolved. He stated that, in his own experience, there had been many reasons that cases were delayed prior to ever reaching the circuit court which had nothing to do with systemic problems such as: claimants who had not reached maximum medical recovery or had relapses in their recovery. Mr. Brewer disagreed with the notion that a regular tort suit would take less time to prosecute than a worker's compensation case.

¶11. The plaintiffs also adduced testimony from a lawyer who no longer took workers' compensation cases because he felt like there was "not enough recovery in it for a lawyer to where it is financially feasible for [him], as a part of [his] general practice, to accept Workers' Comp. cases any more." This lawyer further stated that he stopped taking on such cases because they took too long to prosecute and because the insurance companies would pressure his clients by cutting off their benefits. He opined that it was more frustrating to handle a workers' compensation case than it was to handle a federal court case, and that he regularly advised his clients to take whatever they had been offered because "it ain't worth the fight." On cross-examination, this witness stated that he believed that the Workers' Compensation Commission should give plaintiffs an advantage because "that's the reason it's called Workers' Compensation and not employers' protection."

¶12. The defendants adduced testimony from each of the Commission's members. Beverly Hogan, who had been on the Commission since 1987, testified that the overwhelming majority of claims are never controverted in the first place. In 1993, only 19, 419 major injury claims were filed, and only 2, 716 of those were controverted. Only 200 of those controverted claims were appealed to the full Commission. Commissioner Hogan testified that cases were currently taking an average of 138 days to be heard by the Commission after appeal from the administrative law judge's decision.

¶13. She further described the steps that the Commission had taken since she had been there to streamline the process, including the elimination of mandatory oral argument, revising procedural rules, and instructing administrative law judges to better manage their cases. She testified that the average time between the hearing before the Commission and a resultant order was eleven days. She further testified that 154 of those 200 cases that had been appealed to the full Commission in 1993 were later appealed to the circuit court, and 46 of those 154 were appealed to the Supreme Court. She stated that the Commission was powerless to speed anything up in cases that had been appealed into the circuit court and beyond, but that the Commission had eliminated all backlog in the time that

she has been there, since 1987.

¶14. Commissioner Hogan further testified about the efficacy of their emergency hearing system, wherein a claimant can try to get a hearing within five days of the administrative law judge's decision if benefits have been terminated or if an employer or carrier refuses to pay the benefits. She testified that most of the "emergency" requests that they receive are not true emergencies and thus do not get heard within five days. She noted that Plaintiff Thornhill, who sustained permanent nerve damage while awaiting the disposition of her medical benefits, had never asked for a five day emergency hearing according to her file.

¶15. Commissioner Hogan further testified that claimants can move to compel payment if they have been cut off from medical treatment. These motions, though subject to mutual discovery, only require minimal proof and get disposed of rather rapidly.

¶16. The plaintiffs also called Claire Porter, the chairman of the Commission at the time. She was appointed to the Commission in 1992, and prior to that, had served on a task force that made recommendations to the governor regarding the workers' compensation system. Commissioner Porter testified about the delays that characterized the system prior to her appointment to the system in 1992. She said that the Commission had previously allowed cases to be repeatedly continued to obtain various expert opinions. However, she squarely stated that:

> Those delays are no longer present. We have a system today, although it has been characterized as as complicated as the federal court system, I would say that it is not complicated, and I would say that it is a system that allows parties to get their proof in order, go before an administrative judge, get a hearing, get an order and immediately come to the full Commission and receive immediate orders from the Full Commission. There are appeals past that point, but we really don't have any control over that. That's the system and that is basically what we have done.

¶17. She confirmed that the backlog that existed at every stage of the system prior to 1992 had been eliminated by requiring pre-trial statements which ensured that the parties were prepared for trial and the elimination of most bifurcated hearings. Commissioner Porter testified about each of the plaintiffs. She noted that everyone except Plaintiff Warren had their medical bills paid. Mr. Warren's case involved a dispute over whether he was a regular employee or an independent contractor. Commissioner Porter testified that his case, which was first controverted in 1989, was delayed because it took the parties two years to add all the relevant parties. All of the defendants protested that Mr. Warren was not in their employ. Following that period, Mr. Warren requested several continuances for additional discovery, postponing the administrative law judge hearing until June 2, 1994. At the time of trial, Mr. Warren was pending appeal to the full Commission.

¶18. Commissioner Porter stated that there were no delays in Mr. Cato's case. Mrs. Thornhill's case was delayed in part because she failed to attend an independent medical examination regarding the need for her second surgery. Her benefits were ultimately suspended until she attended the examination, by order of the administrative law judge.[4] There were also notes in her file stating that Mrs. Thornhill had elected not to have the second surgery, and that her lawyer had requested continuances for four years after her petition was first controverted to allow her to reach maximum medical improvement prior to the final hearing on her benefits. Mrs. Thornhill then fired her attorney,

causing more delay while she obtained a new attorney. On cross-examination, Commissioner Porter testified that Mrs. Thornhill had still not reached maximum medical recovery, which has prevented her from completing her controversy.

¶19. Commissioner Porter also expressed that, contrary to his own testimony, the file indicated that Mr. Barnes had been paid benefits during the entire pendency of his controversy. His case was delayed because the Commission reopened it after it had ruled on the first round of appeals, allowing him to go back to the administrative law judge and develop the record on the permanence of his disability. Mr. Barnes settled his case after the Supreme Court reversed and remanded the cause back to the Commission for further proceedings.

¶20. Ricky Dale Dear was also paid his benefits during the pendency of his controversy. Commissioner Porter testified that the administrative law judge's order was entered less than one year after he filed his petition to controvert. Although the employer and carrier appealed, he settled that case in September 1991. Commissioner Porter did not address Dear's contention that he settled because he did not wish to pursue the protracted litigation, although she did say that he was receiving his benefits throughout.

¶21. Commissioner Porter further testified that the disposition of David Graham's claim was delayed because there was a dispute between two carriers as to who was liable for his injuries. Graham's lawyer did not add the second carrier until two years after the Petition to Controvert, when he was ordered to do so by the administrative law judge. She did concede that the administrative law judge took his petition under advisement for seven full months, a delay that should not have occurred. Also the administrative law judge had allowed the parties to take time to obtain medical depositions. Commissioner Porter conceded that following the appeal to the full Commission, the Commission did not hear the case until ten months after the administrative law judge's order, which did not issue until 15 months later, in July, 1992. She reiterated the testimony of Commissioner Hogan, however, that the Commission was currently taking matters under advisement for an average of eleven days.

¶22. On May 9, 1995, the chancery court entered a memorandum opinion and order denying the plaintiffs' requested relief. While finding that each of the six plaintiffs had compellingly miserable experiences with the workers' compensation system, the court noted that they had failed to provide any legal authority for their position that the whole scheme ought to be condemned. The court also made the following finding:

> In this case, the Court is not persuaded that the Commission is solely responsible for the delays in the system. The explanations by the members of the Commission for some of the delays make considerable sense. This does not mean that the Court is awarding the Commission a clean bill of health. It is obvious that for all its contemplated benefits, the workers' compensation system on occasion does not work as well as it should. The delays in the system, whether occasioned by employers reluctant to keep their end of the bargain with the expected dispatch, insurance companies and their attorneys with an interest in running up billable hours or injured workers shopping for a sympathetic doctors, willing, for a fee also, to award a higher disability rating all call for a searching review of the workers' compensation system. But the impetus for any needed tune-ups will not issue from this Court. That is a call of policy which this Court will cheerfully yield to the legislature. *See, e.g., **Kelley v. Mississippi Valley Gas Co.,*** 397 So. 2d

874, 877 (Miss. 1981).

¶23. The plaintiffs presently appeal this decision. Without identifying what they found to be erroneous in the chancery court's ruling, they reiterate, here, three of the issues raised in their complaint: 1) the fact that a workers' compensation claim takes on average 7.3 years to be litigated from the time of the accident to the final disposition in the Supreme Court renders the Workers' Compensation Act constitutionally infirm; 2) the enabling act, Miss. Code Ann. § 71-3-85, is unconstitutional because it requires a biased Commission in which one Commissioner is appointed as a representative of the employee, and one is appointed a representative of employers, with only the third commissioner remaining impartial; and 3) the scheme is unconstitutional because it limits claimants' attorney fees to 25% maximum, but does not limit the amount of attorney fees that can be earned by the carrier or the employer. We take up each of these issues in turn.

## II.

### A.

¶24. The appellants first argue that the delays in the workers' compensation system, Miss. Code Ann. § 71-3-1, et. seq., violate claimants' rights to due process. They rely on their evidence submitted at trial, that the average workers' compensation claim that was taken to the Supreme Court took 7.3 years to reach final disposition from the time of the filing of the original Petition to Controvert. This data is taken from cases that have reached this Court since 1984. They specifically fault the workers' compensation system for requiring two phases more than would a regular lawsuit, namely the hearing before the administrative law judge and the hearing before the full Commission. They also fault the system for having "become just another lawsuit." They do not explain the constitutional infirmity of that feature of the system.

¶25. The appellee (the Commission) responds by first contending that the overwhelming majority of workers' compensation cases are never disputed in the first place, and the system therefore works fine for them. About 14% of all workers' compensation claims are ever controverted, and only about 10% of those are appealed to the full Commission. The Commission reiterates the testimony at trial, that since 1992 there has been very little delay within the Commission's adjudication of claims, although there is often delay while a claimant reaches maximum medical recovery or pursues discovery. Thus, it argues that since the system works for the overwhelming majority of claimants, it cannot be so constitutionally infirm as to require abolition.

¶26. The Commission further argues that the plaintiffs in this case have received due process because they received notice and an opportunity to be heard prior to any deprivation of rights, as commanded by the statutory scheme. For this position it relies on *Bunol v. George Engine Co.*, 996 F.2d 67, 68-69 (5th Cir. 1993) (holding that the three year delay typically required before appeal of an administrative law judge decision to the Workers' Compensation Board does not amount to a due process violation where the aggrieved party had an opportunity to be heard prior to administrative law judge decision).

¶27. The Commission's final argument is that none of the plaintiffs would recover anything under a common law tort system since none of them were injured due to employer fault. It further contends that the reinstatement of common law tort claims would not only *not* resolve such claims in any less

time, given the delays that characterize appellate practice in Mississippi, but would also be harmful to most workers' compensation claimants, who could not receive damages at common law. The Commission also argues that, as was described above in Commissioner Porter's testimony, none of these claimants could prove that their delays were caused by the Commission or the statutory scheme, much less that they were inherent in the system as would reveal constitutional infirmity.

¶28. This Court has held that an act of the Legislature must appear beyond all reasonable doubt to violate the Constitution before it can be struck down. *Pathfinder Coach Div. of Superior Coach Corp. v. Cottrell,* 216 Miss. 358, 62 So. 2d 383, 385 (1953). The appellant save not satisfied this standard. First of all, any delay in the adjudication of claims after they are taken into the circuit court cannot be said to inhere in the workers' compensation system. To the extent that plaintiffs are aggrieved by the length of time that the circuit court and Supreme Court have taken their cases under advisement, they are free to petition for mandamus pursuant to Miss. R. App. Proc. 15 and 21. The relevant inquiry is whether the delay of resolution within the workers' compensation scheme is so egregious as to violate claimants' rights to due process.[(5)]

¶29. Second, many of the delays of which the plaintiffs complain were the result of their own (or, more specifically, their *lawyers'*) actions or inactions. Thirdly, even if there is some inherent delay in the workers' compensation system, (which frankly was not proven in this record), none of these plaintiffs proved that such inherent delays follow a state-imposed deprivation of an established right to benefits that was executed against them without notice or opportunity to be heard. The one case about delay that is cited by the plaintiffs discusses the potential for due process problems in *post-deprivation* delay. *Barry v. Barchi*, 443 U.S. 55, 66, 61 L.Ed.3d 365, 376 (1979) (holding that an administrative hearing must be held within a meaningful time period following the suspension of a horse trainer's license; "Barchi had a property interest in his license sufficient to invoke the protection of the Due Process Clause").

¶30. *Armstrong v. Manzo*, 380 U.S. 545, 552, 14 L.Ed.2d 62, 66 (1965), also cited by the appellants, merely holds that the notice requirement of due process entails the opportunity to be heard in a meaningful time and in a meaningful manner. In that case, a woman was seeking to terminate the parental rights of her child's natural father and had failed to give him any notice of the proceeding. Absent a deprivation of an entitlement to benefits in which a claimant had an established life, liberty, or property interest, there can be no due process problem. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 84 L.Ed.2d 494 (1985) ("Respondents' federal constitutional claim [to have been deprived of his employment without due process] *depends on their having had a property right* in continued employment") (emphasis added). *U.S. Const., Amend. XIV* (" . . . nor shall any State deprive any person of life, liberty, or property, without due process of law . . . ."); *Miss. Const., Art. 3, § 14* ("No person shall be deprived of life, liberty, or property except by due process of law"). Thus, the only delay in this case that would be of any constitutional import is delay that follows a deprivation of benefits that is so long that it impairs a claimant's due process rights to reasonably remedy an unjust deprivation.

¶31. In this case, only one of the claimants appears to have had her benefits cut off at any point during the controversies. Mrs. Thornhill alleged that she could not get a needed surgery approved until it was too late to be of any benefit and that she had her compensation benefits suspended for a time. As was adduced at trial, however, her file indicated that she had refused to attend the

independent medical examination as was legitimately requested by her employer, she had herself refused the surgery, she had never requested an emergency hearing to get the administrative law judge to rule on the second surgery in time for it to be efficacious, and her benefits were suspended by the administrative law judge for a time until she complied with the order to get the independent medical examination. From this record, it appears that any delay in the adjudication of the deprivation of her benefits was due to her own conduct.

¶32. This record does not indicate any of the other plaintiffs to have suffered from a deprivation of their benefits after their entitlement to them has been established. Plaintiff Warren, perhaps the saddest of the cases, has suffered long delays *prior to having an initial hearing*. It appears that these delays are due to the fact that his attorney repeatedly requested continuances to conduct discovery and ascertain all of the relevant parties. His administrative law judge hearing occurred only five months before the trial in this case. There is no evidence in this record regarding the disposition of his claim, or any deprivation of his benefits pursuant to that disposition.

¶33. In addition to the lower court's conclusion that the plaintiffs failed to meet their high burden of demonstrating that this statutory scheme needs to be struck down, we find that the plaintiffs have adduced no proof whatsoever that claimants are suffering inordinate delays in the resolution of the deprivation of their benefits. Only a state-caused deprivation of a life, liberty, or property interest will provoke due process rights. Since the plaintiffs have offered no authority for the proposition that delay in general is unconstitutional (and we have found none), this contention is without merit.[6]

¶34. The plaintiffs cursorily contend that this scheme violates Art. 3, § 24 of the Mississippi Constitution, which provides that "right and justice shall be administered without sale, denial, or delay." Bearing in mind the fact that so much of the delay in these plaintiffs' cases appears to have been their own doing, *compare* **Guiseppe v. Cozzani**, 248 Miss. 588, 159 So. 2d 278 (1964) (constitutional prohibition of delayed justice does not preclude necessary delay). In any event, the plaintiffs offer no authority or argument in this regard, and we therefore decline to address it. **Thomas v. State,** 645 So. 2d 1345, 1349 (Miss. 1994) (holding that this Court need not address arguments not supported by any legal authority).

**B.**

¶35. The plaintiffs next assert the bare allegation that Miss. Code Ann. § 71-3-85(1) is constitutionally infirm because it necessarily injects bias into the administrative system. They argue that the bias arises in the requirement that one Commissioner be someone who by reason of his prior affiliation or vocation can be classed as a representative of employers and a second Commissioner be someone who can be classed as a representative of employees. **Miss. Code Ann. § 71-3-85**. They support their assertion of bias with the fact that workers compensation benefits have decreased since 1991 even though the number of injuries has increased.

¶36. This claim is without merit. First, as a matter of logic, it would seem that any bias that results from the requirement of Commissioners who can be classed as representatives of employers or employees would cancel itself out, since the statute requires one representative of each.[7] Second, the plaintiffs own expert witness, Bill Waller Jr., testified that he did not believe the Commissioners who were sitting at that time, were biased or unfair or that they had engaged in unnecessary delay. The plaintiffs offer no evidence beyond their bare allegation that the adjudications have been biased

because the Commission comprises people who can be classed as having represented employers or employees. Furthermore, they do not address the trial testimony to the effect that all of the Commission's decisions in the two years prior to trial had been unanimous. Since the plaintiff's have fully failed to prove their claim, we reject it.

## C.

¶37. The plaintiffs next allege that the salary cap on claimants' attorney fees pursuant to Miss. Code Ann. § 71-3-63(3) is unconstitutional, because it creates an unequal bargaining position between the claimant and the employer or carrier. They argue that this situation allows employers and carriers to dictate settlement terms to injured claimants. They cite no authority in support of their proposition, and merely allege the constitutional violation to be one of due process.

¶38. The Commission notes that the plaintiffs offered no evidence that the attorney fee cap deprived injured workers of legal representation. It also notes the testimony of the Commissioners at trial that neither have ever received any notice that a worker was unable to obtain legal representation.

¶39. The plaintiffs have offered no authority or evidence in their support. We therefore will not address it. *Thomas v. State,* 645 So. 2d 1349.

## D.

¶40. Finally, the Commission asserts that the plaintiffs cannot now raise these claims in this action because they should have brought them within the appeals of their own individual workers' compensation claims. The Commission alleges that the plaintiffs failed to exhaust their administrative remedies. It cites *Hood v. Mississippi Dept. of Wildlife Conservation*, 571 So. 2d 263 (Miss. 1990), in which this Court held that a plaintiff had to raise his constitutional challenge to his dismissal from employment through the post-termination administrative procedure for such review, and through a separate lawsuit. It further cites *Everitt v. Lovitt,* 192 So. 2d 422, 425 (Miss. 1966), in which this Court held that "[The Workers' Compensation Commission] is generally clothed with full and complete jurisdiction to determine in the first instance all questions arising under the compensation law, and to hear and determine all matters relating to the administration and enforcement of the compensation act . . . ."

¶41. The Commission also cites several cases in which claimants have raised constitutional challenges within, and along with, their petitions to controvert. *Dependents of Nosser v. Natchez Jitney Jungle Inc.*, 511 So. 2d 141 (Miss. 1987) (Rejecting challenge brought before the Commission to the constitutionality of the requirement that only dependents receive death benefits); *Adams v. Petal Mun. Separate Sch. Sys.,* 487 So. 2d 1329 (Miss. 1986) (challenge brought before the Commission to constitutionality of a statutory exemption of the school district); *Southeastern Constr. Co. v. Dependent of S.W. Dodson,* 247 Miss 1, 153 So. 2d 276 (1963) (challenge to constitutionality of Commission's apportionment of benefits); *Pathfinder Coach Div. v. Cottrell*, 216 Miss. 358, 62 So. 2d 383 (affirming circuit court affirmance of Workers' Compensation Commission determination that provision of workers' compensation law that allowed child of bigamous marriage to receive dependent benefits was constitutional).

¶42. In response, the plaintiffs allege in their reply brief that they could not have raised the instant

claims in their individual appeals of their claims before the Commission because the Commission had no authority to declare the Workers' Compensation scheme unconstitutional. They suggest that any requirement of exhaustion of administrative remedies does not apply to challenges of the constitutionality of the agency's enabling act. They cite *N.H. Lyons & Co. v. Corsi,* 3 N.Y.2d 60, 66, 143 N.E.2d 392, 395, 163 N.Y.S.2d 677, 681 (N.Y. 1957) (interpreting statute to allow appeal of constitutionality of labor statute in court rather than through an action before administrative Board of Standards, who ordinarily hears complaints about application of labor laws); *Hernreich v. Quinn*, 350 Mo. 770, 777, 168 S.W.2d 1054, 1058 (Mo. 1943) (noting that parties were required to exhaust administrative opportunity to appeal decision of zoning board "unless they desired to challenge the constitutionality of the ordinance . . . ."); *Idaho Mut. Ben. Ass'n. Inc., v. Robison,* 65 Idaho 793, 154 P.2d 156 (Ida. 1944) (holding that the declaratory judgment statute conferring upon courts jurisdiction to assess the constitutionality of statutes encompassed jurisdiction to assess constitutionality of the unemployment compensation law; statutory grant to Industrial Accident Board of exclusive jurisdiction to consider questions of unemployment compensation law did not strip court of their capacity under declaratory judgment statute).

¶43. We agree with the plaintiffs that they were not required to raise these claims either before the Commission in their petitions to controvert, or in their subsequent court appeals of the Commission's disposition of their petition. *2 Am. Jur. 2d (rev.) Administrative Law § 417* "Certain issues, such as challenges to the constitutionality of the acts of the legislature or the ultimate decision on questions of law are for the courts alone to determine" (collecting cases). In *Bullock v. Roadway Express, Inc.*, 548 So. 2d 1306 (Miss. 1989), we stated that "[t]he [Workers' Compensation] Commission has no authority to grant declaratory judgments, render advisory opinions, or try equitable issues, or other issues, outside the statute." In that case, Bullock had obtained workers' compensation benefits after being injured on the job. Prior to his realization that his illness was work-related, however, he had been receiving insurance benefits from his regular health care insurance provider. Once his illness was determined to be work-related, his regular insurance provider sought reimbursement of the benefits that it had paid him prior to that determination. Bullock sought a declaratory judgment from an administrative law judge of the Workers' Compensation Commission to clarify the rights of the parties involved. The administrative law judge heard the merits of the case and issued an opinion.

¶44. The insurer appealed that opinion to the full Commission, and simultaneously filed suit in the chancery court to determine whether the Commission had jurisdiction to adjudicate the rights at issue. The Commission reversed the order of the administrative law judge, finding that it did not have subject matter jurisdiction to adjudicate the insurer's claim for restitution. The circuit court affirmed that decision. This Court then affirmed the circuit court's judgment, reiterating its prior holding that ". . . a compensation commission is an administrative agency exercising only powers which are specifically granted to it by statute. That does not authorize a commission to try equitable and legal issues involved . . . . We think that these principles apply also to the Mississippi Workmen's Compensation Commission." *Id.* at 1308, *quoting U.S.F. & G. Co. v. Collins*, 231 Miss. 319, 95 So. 2d 456, 463 (1957).

¶45. Thus, it is clear that the Commission did not have jurisdiction to grant the relief that was requested in this case: a declaration that the workers' compensation scheme was unconstitutional, an injunction against any further process of claims, and a restoration of common law remedies in tort. All of the cases cited by the Commission involved constitutional challenges that were directly relevant

to the determination of benefits. *Accord*, *Everitt v. Lovitt,* 192 So. 2d at 425 ("the Mississippi statutes vest full and complete jurisdiction to hear and determine claims for benefits under the workmen's compensation law in the Workmen's Compensation Commission"). Because the Commission was not authorized to grant the collateral relief that was requested in this case, we hold that the plaintiffs were not required to have exhausted these through the administrative process.

## CONCLUSION

¶46. Because we find that the plaintiffs did not provide sufficient proof of any constitutional injury, the judgement below denying them relief was proper. Accordingly, it is affirmed.

**¶47. AFFIRMED.**

**PRATHER AND SULLIVAN, P.JJ., PITTMAN, ROBERTS, SMITH AND MILLS, JJ., CONCUR. LEE, C.J., CONCURS IN RESULT ONLY. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**


**McRAE, JUSTICE, DISSENTING:**


¶48. I disagree with the majority's conclusion that the plaintiffs have failed to provide sufficient proof of constitutional injury. To the contrary, the very delays of which they complain are evidence of the complete breakdown in due process which has served to pervert the intents and purposes of the Workers' Compensation Act. Accordingly, I dissent.

¶49. The Workers' Compensation Law was enacted to provide "for the prevention of injuries and occupational diseases to workers and, in the event of injury or occupational disease, their rehabilitation or restoration to health and vocational opportunity . . . ." Miss. Code Ann. § 71-3-1 (1995). As this Court has stated, "the purpose of the Act is to facilitate the payment of compensation without delay and without unnecessary cost." *H.C. Moody & Sons v. Dedeaux,* 223 Miss. 832, 842-843, 79 So. 2d 225 (1955). Toward that end, we consistently have interpreted the law broadly and liberally so as to achieve the beneficent purposes of the Act. *DeLaughter v. South Central Tractor Parts,* 642 So. 2d 375, 379-380 (Miss. 1994); *Marshall Durbin Companies v. Warren,* 633 So.2d 1006, 1010 (Miss.1994); *General Electric Co. v. McKinnon*, 507 So.2d 363, 367 (Miss.1987); *Barham v. Klumb Forest Products Center, Inc.*, 453 So.2d 1300, 1304 (Miss.1984).

¶50. In *Walters v. Blackledge,* 220 Miss. 485, 71 So. 2d 433 (1954), this Court found that our Workers' Compensation Law did not violate Section 24 of the Mississippi Constitution, which provides that "[a]ll courts shall be open; and every person for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law, and right and justice shall be administered without sale, denial, or delay." That decision examined only the "all courts shall be open" clause, finding that the determination of controversies by the Commission was not an unconstitutional delegation of judicial power because of the statutory provision for review by the circuit court. *Walters,* 220 Miss. at 517-518, 71 So. 2d at 445-446. The Constitution's provision that "justice shall be administered without sale, denial, or delay," however, was not addressed.

¶51. More than forty years ago, when *Walters* was written, claims were swiftly processed and injured workers promptly compensated. As this Court explained in *Dedeaux*,

> If a formal hearing by the Commission is necessary in order to conclude every case involving voluntary payments, then the system of voluntary payments established by the statute would be seriously encumbered and handicapped. In the last five years there have been 158,687 claims processed through the Commission, but there have been only 1,214 controverted claims. During the same period there have been 157,473 uncontroverted claims, of what 35,997 have been closed by final payment. We do not think that it was the legislative intent to require that there be a formal hearing by the Commission in order to close each of these and other voluntary payment cases. In fact, the express terms of the statute as discussed above indicate the contrary.

*Dedeaux,* 223 Miss. at 844-845, 79 So. 2d at 229-230. Much has changed over the past four decades. Now, controverted claims are heard by an administrative law judge, and subject to review by the whole Commission. Commission decisions may be appealed to the circuit court, which decisions are subject to appellate review by the Court of Appeals and this Court. Years may pass before a claim is finally resolved. Moreover, the volume of claims processed by the Commission has mushroomed. Absent some procedural safeguards, we cannot say that the state's Workers' Compensation scheme provides that justice be "administered without sale, denial, or delay" as required by section 24 of our Constitution. Accordingly, I dissent.

1. The plaintiffs' first action in this matter, which was filed in federal court, originally attempted to have a class certified. That action was voluntarily dismissed. In this case, the plaintiffs are not seeking monetary damages, but merely declaratory and injunctive relief.

2. Mr. Waller testified that the system works as follows: a Petition to Controvert is filed, which is followed by a hearing by an administrative law judge. If a party wishes to appeal the administrative law judge decision, he gets a hearing by the full Workers' Compensation Commission. Following the Commission's decision, either party can take an appeal in the circuit court where the injury occurred and a subsequent appeal to the Supreme Court.

3. For some reason, this defense witness was heard out of turn, prior to the close of the plaintiffs' case.

4. Employers and carriers are entitled to have the claimant subject to a second medical opinion, and they have the right to have benefits suspended should the claimant fail to do so.

5. We have assumed that the plaintiffs are complaining about due process violations. They mentioned a takings claim in their argument summary, but never developed it.

6. In their reply brief, the plaintiffs assert the bare allegation that the Workers' Compensation Act deprives claimants of their right to sue in the common law of tort. They cite no authority for this implicit suggestion that the right to sue in common law is a life, liberty or property interest such as requires due process in its deprivation. The appellees aptly point out, however, that none of these

plaintiffs would have a claim in common law tort because none of their injuries arose out of their employers' negligence.

7. The third representative is only required to be a lawyer who has practiced at least five years.