922 So.2d 836 (2006)
Mary Jane Daugherty FOGARTY, Appellant
v.
Larry Joe FOGARTY, Appellee.
No. 2004-CA-02244-COA.
Court of Appeals of Mississippi.
February 28, 2006.
*837 David L. Walker, attorney for appellant.
Adam A. Pittman, Batesville, attorney for appellee.
Before MYERS, P.J., CHANDLER and GRIFFIS, JJ.
MYERS, P.J., for the Court.
¶ 1. Mary Jane and Larry Fogarty entered a consent to divorce and agreement to allow the court to determine issues. A trial was held to determine the distribution of the marital assets. At the conclusion of the trial, the court issued its findings of fact and conclusions of law distributing the assets. From this order Mary Jane appeals *838 raising issues of classification of separate and marital property and the adequacy of alimony.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Mary Jane and Larry Fogarty were married on July 7, 1988, and separated on January 30, 2000, with an order of temporary relief being entered on April 12, 2000. The temporary order provided that Mary Jane would live, rent free, in the parties' former marital home, and Larry would pay $196 per month as temporary alimony. This matter was brought for trial on July 30, 2004, upon agreement of the parties for entry of decree of divorce on the ground of irreconcilable differences. The court entered its findings of facts and conclusions of law on October 13, 2004, and final judgment of divorce on October 14, 2004.
¶ 4. During the marriage the parties resided in the home Larry acquired prior to the parties' marriage. There was no mortgage on the house during the marriage of Mary Jane and Larry. Some improvements were done to the home during the marriage, including the addition of a carport. These improvements were done by the parties.
¶ 5. Items of personal property were acquired during the marriage. These items included vehicles and an airplane. The vehicles included a 1997 Buick LeSabre and a camper trailer. Additional personal items included a lawnmower and a four-wheeler.
¶ 6. Additionally, an automobile body shop business was started during the marriage. The body shop was operated out of a leased building, the inventory was sold on consignment, and the work was done by the husband or hired labor.
¶ 7. The parties accumulated certain debt during the marriage; this debt was nearly $26,000 over three credit cards. Larry serviced all of the debt from the time of entry of the temporary order until final judgment.
¶ 8. Following the entry of the temporary order both parties acquired additional assets. Mary Jane acquired a vehicle and Larry a parcel of land with mobile home in which he began to reside.
¶ 9. The trial court issued its findings of facts and conclusions of law which distributed the assets of the marriage and provided rehabilitative alimony for Mary Jane. The court found the marital assets to have a value of $48,000 with liabilities of $26,000, leaving a net value of the marital estate of $22,000. Larry was given the airplane, while Mary Jane was given the lawnmower and the four-wheeler. The marital residence was distributed to Larry while Mary Jane received all of the contents. Additionally, Mary Jane was allowed to remain in the house, rent free, for two years. The body shop was distributed to Larry. Larry was to pay Mary Jane $200 per month for twenty-four months as rehabilitative alimony and assume all credit card debt. Finally, Larry was ordered to pay Mary Jane's attorney fees in the amount of $3025.
¶ 10. Following the entry of the final judgement, Mary Jane appealed raising the following issues:
I. WHETHER THE CHANCELLOR ERRED IN DETERMINING THAT THE OLE MISS BODY SHOP WAS A NON-MARITAL ASSET.
II. WHETHER THE CHANCELLOR ERRED IN DETERMINING THAT LARRY FOGARTY IS TO RECEIVE SOLE OWNERSHIP OF THE MARITAL RESIDENCE.
III. WHETHER THE CHANCELLOR ERRED IN DETERMINING THAT THE APPELLANT IS ENTITLED *839 TO REHABILITATIVE ALIMONY OF $200 PER MONTH FOR TWENTY-FOUR MONTHS.
IV. WHETHER THE CHANCELLOR ERRED IN FAILING TO AWARD THE APPELLANT PERMANENT AND LUMP SUM ALIMONY.

DISCUSSION
¶ 11. When reviewing the decision of a chancellor, this Court is to apply a limited standard of review. Miss. Dept. Human Services v. Shelby, 802 So.2d 89, 92 (¶ 11) (Miss.2001). We will not disturb a chancellor's division of marital assets or award of alimony unless the court was manifestly wrong, abused its discretion or applied an erroneous legal standard. Sandlin v. Sandlin, 699 So.2d 1198, 1203 (Miss.1997).

I. WHETHER THE CHANCELLOR ERRED IN DETERMINING THAT THE OLE MISS BODY SHOP WAS A NON-MARITAL ASSET.
¶ 12. Mary Jane raises as her first point of error the chancellor's determination that the body shop was a non-marital asset, and this mis-characterization resulted in an inequitable distribution of marital assets. We do not agree, and find that the trial court classified the body shop as a marital asset.
¶ 13. In order to equitably divide marital property a chancellor must follow the guidelines set forth in Hemsley v. Hemsley, 639 So.2d 909 (Miss.1994) and Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994). The chancellor must first distinguish the character of the parties' assets between marital and non-marital. Following this characterization, the chancellor divides the marital property between the parties employing the Ferguson factors. If this division of assets adequately provides for the needs of both parties, in light of the non-marital property, no more need be done. When the division of property leaves a deficit for one party, then the court is to decide alimony based on the value of non-marital property. Johnson v. Johnson, 650 So.2d 1281, 1287 (Miss.1994).
¶ 14. In the chancellor's findings of fact and conclusion of law, property was separated between marital and non-marital. A non-marital asset attributed to Mary Jane was the vehicle purchased by her since the separation. Larry's non-marital property was the trailer home and property he purchased following the separation. Included in the marital property classification is the body shop. The chancellor included in his finding that a value had not been attached to the body shop, and it was shown to produce income to the husband and was to be dealt with later as alimony.
¶ 15. The body shop was operated as a sole proprietorship. Our review of the record shows that the body shop did not have any assets. All assets of the body shop were leased from the prior operator of the body shop. The inventory of the shop was held on consignment and was not property of the shop. With the lack of assets, the sole asset of the body shop is the goodwill attributed to Larry. The supreme court has addressed the issue of goodwill in Watson v. Watson, 882 So.2d 95 (Miss.2004). In Watson the court ruled that it would be inequitable to use goodwill to calculate both alimony and the value of the business for distribution of property. Id. at 101 (¶ 26).
¶ 16. In this case the chancellor avoided the inequity by using the value of the body shop in determining alimony and not in the division of property. No value of the business was supplied to the court other than the tax returns of Larry that provided the profits and losses of the body shop. This is the only method of valuation before the *840 trial court. As mentioned above, the body shop held no assets, all was leased from the prior operator. In the findings of fact and conclusions of law the chancellor stated that the body shop would be addressed as alimony. We agree that this was proper.

II. WHETHER THE CHANCELLOR ERRED IN DETERMINING THAT LARRY FOGARTY IS TO RECEIVE SOLE OWNERSHIP OF THE MARITAL RESIDENCE.
¶ 17. As her second issue on appeal, Mary Jane raises the trial court's awarding of the marital residence to Larry. Mary Jane argues that she did not receive any equitable interest in the marital residence.
¶ 18. In the findings of fact and conclusion of law, the trial court characterized the marital residence as having been owned by Larry prior to the marriage, that the parties had lived there as husband and wife, and that it became marital property due to commingling. The court allowed Mary Jane to live in the house for two years following the divorce rent free, which the court valued at $400 per month. This free rent provided Mary Jane with a $9,600 value in the assets of the marital estate.
¶ 19. Equitable division of assets does not require that each party continue to have a possessory interest in the asset. A party being divested of her interest in an asset is compensated for her divestiture by receiving other assets or through monetary compensation. Mary Jane received the latter in this case. She received two years free rent, valued at $9,600, as compensation for her interest in the marital residence. This issue is without merit.

III. WHETHER THE CHANCELLOR ERRED IN DETERMINING THAT THE APPELLANT IS ENTITLED TO REHABILITATIVE ALIMONY OF $200 PER MONTH FOR TWENTY-FOUR MONTHS.

IV. WHETHER THE CHANCELLOR ERRED IN FAILING TO AWARD THE APPELLANT PERMANENT AND LUMP SUM ALIMONY.
¶ 20. Mary Jane's final two issues on appeal concern the chancellor's award of rehabilitative alimony and failure to award lump sum alimony. We do not agree with her arguments.
¶ 21. An explanation of the difference between rehabilitative and lump sum alimony will be helpful in this discussion. Rehabilitative alimony is an equitable mechanism which allows a party needing assistance to become self-supporting without becoming destitute in the interim. Hubbard v. Hubbard, 656 So.2d 124, 130 (Miss.1995). Lump sum alimony is a fixed and certain sum paid over a definite period of time. Id.
¶ 22. In his findings of fact and conclusion of law, the chancellor clearly indicates that the factors for determining alimony in Armstrong v. Armstrong, 618 So.2d 1278 (Miss.1993), were considered in the final judgment. The reasons given for the award of alimony were that Mary Jane would have a free place to live for two years, that the parties had a long marriage and that she was receiving disability income.
¶ 23. When reviewing the decisions by a chancellor, we will not disturb the factual findings of a chancellor when supported by substantial evidence unless we can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied the wrong legal standard. Cummings *841 v. Benderman, 681 So.2d 97, 100 (Miss.1996). "The amount of alimony awarded is a matter primarily within the discretion of the chancery court because of `its peculiar opportunity to sense the equities of the situation before it.'" Tilley v. Tilley, 610 So.2d 348, 351 (Miss.1992).
¶ 24. To properly understand the award of rehabilitative alimony, a complete review of the distribution of the marital estate is necessary. In his ruling, the chancellor awarded Larry ownership of the home, valued at $40,000, and the airplane, valued at $7,000, and directed him to pay the parties' marital debt of almost $26,000 as well as the wife's $3,025 in attorney fees. Mary Jane was awarded the lawn mower, valued at $500, the four-wheeler, valued at $1,000, and was allowed to remain in the marital residence for two years rent free, valued at $9600. This distribution gives Larry an estate valued at $14,975 and Mary Jane an estate of $11,100.
¶ 25. When these estates are reviewed in combination with the two year rehabilitative alimony of $200 per month, Mary Jane's estate is valued at $15,900 and Larry's estate is valued at $10,175. These values do not include the amount of temporary support that Larry has paid to Mary Jane since their separation in April 2000 prior to the divorce in October 2004, the value of living in the marital residence over this period, or the value of all the personal property in the marital residence awarded to Mary Jane. We do not find any error in the chancellor's distribution; this issue is without merit.

CONCLUSION
¶ 26. We find that the Chancery Court of Panola County did not abuse its discretion in the distribution of assets or in its award of rehabilitative alimony. We affirm the judgment.
¶ 27. THE JUDGMENT OF THE PANOLA COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE, P.J., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, AND ROBERTS, JJ., CONCUR.