932 So.2d 76 (2006)
Andrea Marshall ELAM f/k/a Andrea Carol Marshall Hinson, Appellant,
v.
Melvin HINSON, Appellee.
Andrea Carol Marshall Hinson, Appellant,
v.
Melvin Hinson, Appellee.
Nos. 2005-CA-00844-COA, 2003-CA-00239-COA.
Court of Appeals of Mississippi.
June 20, 2006.
B. Blake Teller, Vicksburg, attorney for appellant.
*77 Edwin Woods, attorney for appellee.
Before MYERS, P.J., SOUTHWICK and BARNES, JJ.
BARNES, J., for the Court.
¶ 1. Andrea Hinson appeals a final judgment of divorce granted by the Chancery Court of Warren County. On appeal, Andrea contests the chancery court's division of the marital assets and argues that she should have been awarded lump sum alimony. We find that the chancery court's division of the assets and decision to award only periodic alimony is supported by the record and therefore affirm.

STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. On July 26, 2001, Andrea filed for divorce from her husband Melvin on the grounds of habitual cruel and inhuman treatment and adultery, or, in the alternative, irreconcilable differences. Melvin counterclaimed alleging similar grounds. Both parties then withdrew their fault-based grounds for divorce and agreed to a divorce on the grounds of irreconcilable differences. The parties were unable to agree, however, on the issues of property settlement, alimony, and child support and custody. These issues were tried before a chancellor on October 1, 2002. The chancellor issued a bench ruling on November 4, 2002, which granted Andrea physical custody of the parties' two minor children, divided the marital property, and awarded periodic alimony to Andrea. Aggrieved by the ruling, Andrea filed a motion for a new trial or to alter or amend the judgment, which was denied by the chancery court. Andrea then appealed the denial of her motion. On appeal, this Court found that we did not have jurisdiction to review Andrea's appeal because no final judgment of divorce had been entered by the chancery court. Hinson v. Hinson, 877 So.2d 547 (Miss.Ct.App.2004). In that decision, we also noted that we would be unable to adjudicate Andrea's appeal until the chancellor had made findings of fact in support of her judgment. Id. at 548(¶ 6).
¶ 3. Andrea accordingly filed a second motion for a new trial or to alter or amend the judgment and for entry of final judgment with the chancery court. The chancellor denied that motion, and entered findings of fact and conclusions of law on March 8, 2005. On April 21, 2005, the chancellor entered a final judgment of divorce, from which Andrea timely appealed to this Court.
¶ 4. The chancellor found that the parties were married on June 16, 1984. The parties had two children, aged ten and seven at the time of trial. Melvin Hinson was a plumber who originally worked for his father in Hinson Plumbing Company. Because his father suffered from declining health, Melvin eventually took over the business and changed the focus from residential to commercial plumbing. From the point that his father retired, the business was a sole proprietorship in Melvin's name.
¶ 5. When the parties married, Andrea had spent one year in a community college. Andrea then went back to college and finished her studies at Mississippi College, obtaining an undergraduate degree in education. Andrea's father paid her tuition. After Andrea's graduation in 1992, she and Melvin started their family. In 1998, Andrea began teaching full-time in Vicksburg. She obtained a master's degree in elementary education in 2002, which was paid for by Hinson Plumbing. Throughout the marriage, both parties' living expenses were paid for by Hinson Plumbing; Andrea was allowed to retain all of her income for personal use. Melvin also provided a maid for the home so that Andrea *78 could spend time with the children and pursue her teaching career.
¶ 6. Melvin and Andrea separated in January 2001. At that time, they owned three parcels of real estate: the marital residence, which was located on 3.3 acres of land; a 13 acre section of land; and a 19 acre section of land. The chancellor determined at trial that the collective value of the real estate was $163,000. The parties owned several vehicles, including four work trucks used by Melvin's business, and a 1999 Chevrolet Tahoe driven by Andrea and financed by Melvin. The collective value of the vehicles was $120,000. Also included in the marital estate was equipment related to the plumbing business, including trackhoes, trenchers, and trailers, the undisputed value of which was $140,000.
¶ 7. The cash assets of the parties were disputed at trial. Andrea claimed that Melvin had $82,179 in cash. Melvin stated that Andrea came up with this figure because he, through Hinson Plumbing, had received a check for that exact amount during the month that Andrea was compiling her estimate of the marital assets. Melvin testified that the only cash he possessed at the time of trial was approximately $4,000, which he claimed was the amount remaining after he had paid the payroll for Hinson Plumbing. Andrea stated that Melvin had approximately $100,000 in certificates of deposit. Melvin, however, claimed that this figure was closer to $64,000, and that the certificates were encumbered by debt. As to liabilities, Andrea claimed that Melvin owed $158,960, while Melvin stated that he owed $180,000. Additionally, Melvin claimed that a judgment had been entered against him in the Circuit Court of Hinds County in the amount of $53,000.
¶ 8. At the time of the trial, Andrea was employed as a full-time teacher, making approximately $30,000 annually. The chancellor found that Melvin earned approximately $80,000 per year through his business. Andrea's job provided health insurance with her salary, while Melvin, being self-employed, received no health benefits in addition to his salary.
¶ 9. At the close of trial, the chancellor awarded joint legal custody of the children, and awarded physical custody of both children to Andrea. All of the property owned by the parties was designated as marital property.[1] Melvin was ordered to pay $1,300 per month in child support and $350 per month in periodic alimony. He was ordered to maintain health insurance and a $500,000 life insurance policy for the benefit of the children. As to the real property owned by the parties, the chancellor awarded the 13 acre tract to Andrea, and the 19 acre tract to Melvin. Both parties received an equal interest in the marital home and the 3.3 acres upon which it was located, and the mortgage on the home was divided equally between the parties.[2] Andrea was awarded the Chevrolet Tahoe, and Melvin was required to continue making the payments on it. Melvin was allowed to keep the equipment, tools, and vehicles necessary to operate his business. He was also awarded his hunting dogs, a bass boat, and his motorcycle.
¶ 10. On appeal, Andrea contends that the chancellor failed to distribute the marital property equitably. In support of this contention, she essentially re-argues the evidence introduced at trial. She also argues that she is entitled to an award of *79 lump sum alimony because she assisted in the plumbing business, and because she claims that the chancellor's award does not afford her the same standard of living to which she was accustomed prior to the parties' divorce. Under our limited standard of review, we find that the chancellor did not abuse her discretion in dividing the marital assets or in her award of alimony. Accordingly, we affirm.

STANDARD OF REVIEW
¶ 11. Our standard of review in divorce proceedings is limited. Sandlin v. Sandlin, 699 So.2d 1198, 1203 (Miss.1997). "This court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." Id. (quoting Ferguson v. Ferguson, 639 So.2d 921, 930 (Miss.1994); Bell v. Parker, 563 So.2d 594, 596-97 (Miss.1990)). "Where there is substantial evidence to support the chancellor's findings, this court is without the authority to disturb the chancellor's conclusions, although we might have found otherwise as an original matter." City of Picayune v. Southern Regional Corp., 916 So.2d 510, 518-19(¶ 22) (Miss.2005) (citing In re Guardianship of Savell, 876 So.2d 308, 312(¶ 4) (Miss.2004)).

ISSUES AND ANALYSIS

I. Whether the chancellor failed to divide the marital assets equitably.
¶ 12. Andrea argues that she should "be awarded $165,000 in cash and other assets to more equitably divide the marital property." This amount she claims should come from two sources. First, she should receive a lump sum property settlement of $115,000 from the plumbing business, because she contributed to the operation of the plumbing business during its time of growth.[3] She arrives at this figure by adding the value of the equipment of the plumbing business, $140,000, and the value of the vehicles owned by the parties, $90,000,[4] and then halving the resulting total of $230,000. Second, she posits that she should receive $50,000 in cash as her portion of the cash assets which she claims Melvin possessed following the parties' separation.
¶ 13. The parties agree that the proper legal standard to be applied in equitably dividing the estate is found in Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994). The Ferguson factors are as follows:
(1) Substantial contribution to the accumulation of the property.
Factors to be considered in determining contribution are as follows:
a. Direct or indirect economic contribution to the acquisition of the property;
b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties, and duration of the marriage; and
c. Contribution to the education, training, or other accomplishment *80 bearing on the earning power of the spouse accumulating the assets.
(2) The degree to which each spouse has extended, withdrawn, or otherwise disposed of marital assets in any prior distribution of such assets by agreement, decree, or otherwise.
(3) The market value and the emotional value of the assets subject to distribution.
(4) The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
(5) Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
(6) The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
(7) The needs of the parties for financial security with due regard to the combination of assets, income, and earning capacity; and
(8) Any other factor which in equity should be considered.
Id. at 928. The chancellor correctly cited these factors in her findings of fact and conclusions of law.
¶ 14. Andrea argues that the plumbing business was "in the hole" at the time the parties married, and that after their marriage the business changed from a residential to a commercial focus and greatly increased in value. She argues that her "presence enabled Mr. Hinson to significantly grow his plumbing business," that "[s]he worked for the business or she stayed home when the parties so desired," and that, under the chancellor's ruling, she will not "enjoy the benefits of the business which supported her standard of living for eighteen years."
¶ 15. The chancellor, in dividing the marital property, found that the plumbing company "generated the revenue that provided for the family and led to the accumulated property." The chancellor also found that Melvin operated the plumbing business "with very little help from Andrea." We find that substantial evidence supports this conclusion. While Andrea claimed that she answered phones for the business, assisted with payroll, and performed bookkeeping tasks, Melvin testified that Andrea's participation in the business was only minimal. Furthermore, as the chancellor noted, Andrea appears to have devoted her time during the marriage toward obtaining both an undergraduate and a graduate degree, and then teaching full-time. Between receiving the undergraduate and graduate degrees, Andrea spent time with the couple's children. It is undisputed that Melvin provided a maid to care for the household during the marriage. Also, it is undisputed that the income from Melvin's business paid for all of the expenses of the parties; Andrea was allowed to devote all of the income that she earned in her teaching positions to her own personal use. These factors support the chancellor's finding that Andrea did not contribute significantly to the operation of the plumbing business.
¶ 16. Furthermore, and perhaps most importantly, the chancellor based her decision to allow Melvin to retain the assets of the business in order that "he may continue to pay those financial obligations ordered by this Court." Melvin testified that the income which the business received fluctuated, and the business was not always in a state of financial stability. Andrea recognizes this fact, stating in her *81 brief that the chancellor made the proper decision in awarding Melvin the assets of the plumbing business and thereby allowing him to continue to operate the business. Thus, the chancellor awarded the business assets to Melvin because she wanted to ensure that Andrea would continue to receive a steady stream of income in the form of the child support and periodic alimony awards.
¶ 17. As to Andrea's claim that she should receive $50,000 of Melvin's cash assets, we note that the value of these assets was not established at trial. Andrea claimed that Melvin had approximately $100,000 in CD's. Melvin acknowledged that he had CD's in the amount of $64,000. However, he stated that much of that amount was in favor of the parties' children, and that the CD's were encumbered by debt. Andrea also claimed that Melvin had cash assets in the amount of $82,179. Melvin stated that Andrea likely derived this figure from a check his plumbing company received in exactly that amount at the time the parties separated. Andrea claimed that Melvin kept cash in a safe deposit box. Melvin agreed that he had $12,000 in a safe deposit box at one time. However, he claimed that this money was now gone and had likely been used to pay the weekly payroll for Hinson Plumbing, which, according to Melvin's testimony, averaged between $5,000 and $12,000 per week. Andrea alleges in her appellate brief that Melvin dissipated these assets, but she offers no evidence to support her allegations.
¶ 18. Because the only evidence on the amount of cash assets was the conflicting testimony of the parties, the chancellor was entitled to weigh Melvin's testimony as more persuasive. Furthermore, the chancellor awarded child support and alimony payments to Andrea. These payments could just as well come from Melvin's cash assets as from his plumbing business. We find the chancellor's decision in this regard was not clearly erroneous.

II. Whether the chancellor erred in failing to award lump sum alimony.
¶ 19. The parties agree that an award of lump sum alimony is determined by the factors enunciated in Tilley v. Tilley, 610 So.2d 348 (Miss.1992). The factors are:
(1) Substantial contribution to the accumulation of total wealth of payor either by quitting a job to become a housewife or by assisting in the spouse's business;
(2) A long marriage;
(3) Whether the recipient spouse has no separate income or the separate income is meager by comparison; and
(4) Without the lump sum award the receiving spouse would lack any financial security.
Id. at 352. These are the factors which the chancellor considered in her findings of fact and conclusions of law.
¶ 20. As the chancellor correctly pointed out, Andrea appears to meet only one of these factors: that the marriage between the parties was long. The facts presented at trial showed that she never quit a job to become a housewife. In fact, Melvin provided a maid so that Andrea could pursue her teaching career. It is undisputed that Andrea had a separate income at the time of the trial. Andrea claims that her separate income was meager in comparison to Melvin's. Testimony at trial indicated that Melvin was left with approximately $80,000 of income per year, without benefits, while Andrea made approximately $30,000 per year with benefits. The chancellor found, and we agree, that Andrea's income was not "meager" in comparison *82 to Melvin's, especially in light of the fact that she would be receiving periodic alimony and child support from Melvin on a monthly basis. Also, the fact that Andrea's salary includes health benefits and Melvin's does not closes the gap between the parties' respective incomes. The chancellor correctly determined that with the salary and benefits awarded by the Court, Andrea would receive nearly $50,000 annually, plus the cash value of her free health insurance supplied by her employer. Andrea argues that the chancellor's award will cause her to lack financial security. However, while her standard of living may change, we see no proof that Andrea will lack financial security because she did not receive a lump sum alimony award.
¶ 21. Andrea argues strenuously that she should be awarded lump sum alimony because she "contributed to the growth of Mr. Hinson's plumbing business." She claims that she provided "office support for the business as well as support at home to enable Mr. Hinson to be free to grow the business and accumulate additional marital assets." She presented similar testimony at trial; however, her testimony was contradicted by Melvin's testimony as well as her own admissions. Faced with conflicting testimony on this issue, the chancellor chose to adopt Melvin's testimony regarding Andrea's participation in the business. Melvin's testimony was corroborated by Andrea's own admissions. For instance, Andrea agreed that Melvin provided a maid to care for the home while she pursued her teaching career and spent time with the children. Andrea agreed that she was allowed to keep all of the money she made in her jobs, while Melvin's business paid for all of her expenses. Andrea also agreed that cash flow of Melvin's business fluctuated significantly.
¶ 22. This being the case, we find that there is substantial evidence to support the chancellor's findings. The chancellor's findings of fact and conclusions of law are not clearly erroneous, and, accordingly, we affirm.
¶ 23. THE JUDGMENT OF THE CHANCERY COURT OF WARREN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, ISHEE AND ROBERTS, JJ., CONCUR.
NOTES
[1] This issue was undisputed.
[2] Andrea was given the right to possess the home until it was sold to a third party by agreement of the parties, or purchased outright by one of the parties.
[3] She claims, however, "It is ok for Mr. Hinson to keep the assets [of the plumbing business] because he may utilize these assets to continue the operation of the plumbing business." Thus, she does not argue that assets from the plumbing business should be allocated to her. Rather, she argues that Melvin should make a cash payment of this amount based on the assets of his business.
[4] She arrives at the figure of $90,000 by taking the undisputed total value of the vehicles of the plumbing business, $120,000, and subtracting the approximate $30,000 value of the Chevrolet Tahoe she was allowed to keep.