BARNES, J.,
 

 for the Court.
 

 ¶ 1. Carey Stewart (Carey) appeals the decision of the Chancery Court of Copiah County regarding the classification and distribution of marital assets and the attorney’s fees awarded to Bessie Stewart (Bessie). Finding no error, we affirm.
 

 SUMMARY OF FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. Carey and Bessie were married on March 23, 1994, and resided in Copiah County, Mississippi. They have one child together, Jamar Stewart, whose date of birth is September 3, 1996. Also, through previous relationships, Carey has two daughters, and Bessie has one daughter. Both had full custody of their children.
 

 ¶ 3. Carey owned and operated Stewart’s Auto Sales and Body Shop in Hazle-hurst, Mississippi, and he had owned the business for fifteen years prior to his marriage to Bessie. In the course of business, Carey bought damaged vehicles and repaired them for resale; therefore, inventory changed on a rotating basis. Carey was
 
 *772
 
 solely responsible for any business indebtedness, both as to the mortgage and loans on the personal properties. Although Bessie testified that she worked at the auto shop for a short period of time, she was compensated for her work. For a period of time, Bessie attended college two or three nights a week, but eventually, she went back to teaching when Jamar was old enough to attend school.
 
 [1]
 

 ¶4. Carey also owned a separate residential property prior to the marriage, as did Bessie.
 
 [2]
 
 Although Carey and Bessie lived in his prior residence during the first few years of marriage, they eventually built a new home. The proceeds from the sale of Carey’s prior residence, totaling $23,000, were put into the construction of their “marital property” residence.
 

 ¶ 5. On December 5, 2004, Carey and Bessie separated from each other. They reconciled on February 4, 2005, and lived together as husband and wife until their final separation on March 6, 2005. They have not cohabitated since that time. Carey filed his complaint for divorce and related relief on May 11, 2005. Subsequent to trial, but prior to the rendering of the chancellor’s opinion, the parties submitted a joint amended consent and stipulation agreement, which was adopted by the chancellor. Carey was granted full legal and physical custody of Jamar, subject to the visitation rights of Bessie. Bessie was also ordered to pay $221 per month in child support. Carey was ordered to pay Bessie the sum of $56,610 in cash as equitable distribution of the marital property. On April 24, 2007, the chancellor granted the parties a divorce on the ground of irreconcilable differences, and on May 10, 2007, he entered a final judgment of divorce.
 

 ¶ 6. Carey now appeals the chancellor’s findings regarding the classification of the marital estate and award of attorney’s fees to Bessie.
 

 STANDARD OF REVIEW
 

 ¶ 7. This Court reviews a chancellor’s decision under an abuse of discretion standard and will not disturb the chancellor’s findings of fact unless they are “manifestly wrong or clearly erroneous.”
 
 Mosby v. Mosby,
 
 962 So.2d 119, 121 (¶ 6) (Miss.Ct.App.2007). In determining the equitable division of marital property, a chancellor must follow the guidelines established in
 
 Hemsley v. Hemsley,
 
 639 So.2d 909 (Miss.1994) and
 
 Ferguson v. Ferguson,
 
 639 So.2d 921 (Miss.1994).
 
 Fogarty v. Fogarty,
 
 922 So.2d 836, 839 (¶ 13) (Miss.Ct.App.2006). First, the parties’ assets have to be classified as either marital or non-marital.
 
 Id.
 
 Unless an asset is shown to be solely attributable to a party’s separate estate prior to or outside of the marriage, it is subject to equitable division.
 
 Pearson v. Pearson,
 
 761 So.2d 157, 162 (¶ 15) (Miss.2000). Then the chancellor must equitably divide the designated marital property between the parties using the factors set forth in
 
 Ferguson
 
 as guidelines.
 
 Long v. Long,
 
 928 So.2d 1001, 1004 (¶ 19) (Miss.Ct.App.2006). This Court has stated that “equitable distribution is a fair division of marital property based on each spouse[’s] contribution to [the] assets during the marriage.”
 
 Spahn v. Spahn,
 
 959 So.2d 8, 14 (¶ 14) (Miss.Ct.App.2006). Therefore, the key goal for a chancellor in a divorce proceeding is to make certain
 
 *773
 
 that equity is accomplished, which requires fairness to both parties.
 
 Clark v. Clark,
 
 754 So.2d 450, 461 (¶ 62) (Miss.1999). Additionally, the chancellor’s objective is not only to distribute the marital property fairly, but to “conclude the parties’ legal relationship, leaving them each in a self-sufficient state, where the facts and circumstances permit total dissolution.”
 
 Bullock v. Bullock,
 
 699 So.2d 1205, 1211 (¶ 26) (Miss.1997) (quoting
 
 Ferguson,
 
 639 So.2d at 929).
 

 I. Whether the chancellor erred by classifying proceeds from the sale of Carey’s prior residence as marital property.
 

 ¶ 8. Carey contends that the $23,000 in proceeds from the sale of his prior residence, which was reinvested in the new marital residence, should not have been classified as marital property. There were conflicting testimony and evidence as to how long Carey and Bessie resided in Carey’s previous residence. Carey testified at one point that it was seven years; then later he stated that it was about three years. The chancellor did not find the latter testimony credible as Carey and Bessie were married in 1994, yet testimony also showed that they did not move into their new home until 2002 or 2003.
 

 ¶ 9. However, we find the issue of whether the couple lived in Carey’s prior residence for three years, seven years, or nine years irrelevant. Even if it can be proved that assets are attributable to a party’s separate estate, “when separate, non-marital property is commingled with marital property the separate property can lose its characterization as such and become marital property subject to equitable distribution.”
 
 Franks v. Franks,
 
 759 So.2d 1164, 1169 (¶ 17) (Miss.1999). Consequently, “non-marital assets may lose their characterization as such if the party commingles the asset with marital property or uses them for familial benefit.”
 
 Hankins v. Hankins,
 
 866 So.2d 508, 511 (¶ 14) (Miss.Ct.App.2004) (citing
 
 Johnson v. Johnson,
 
 650 So.2d 1281, 1286 (Miss.1994)). As the chancellor noted, both homes that Carey and Bessie resided in were used by the family. Although Carey owned the house prior to his marriage to Bessie, the property gained status as a marital asset upon its prolonged use as their family home.
 
 See A & L, Inc. v. Grantham,
 
 747 So.2d 832, 839-40 (¶ 26) (Miss.1999) (proceeds from the sale of the husband’s home that was owned prior to marriage were used to support his family and for construction of a new home for the couple; therefore, the proceeds were commingled and converted into marital assets subject to distribution).
 

 ¶ 10. Carey also argues that although Bessie resided at his former home, she made no contributions toward any improvements and, thus, was not entitled to any equity that accrued while she lived there. Although the record reflects that Bessie was a homemaker and student for much of the marriage and, therefore, made minimal financial contributions to the home. or business, that is not enough to deny her an equitable share of the marital assets. Carey encouraged Bessie to stay home, raise their family, and go to school to further her education. Carey even hired a housekeeper for their home, so that Bessie might concentrate on her studies. Therefore, we find that Bessie’s role as a homemaker and mother during then-time at Carey’s prior residence was sufficient to warrant a showing of contribution to the equity of the home. In reviewing a chancellor’s ruling in a divorce proceeding, this Court must assume that any contributions or efforts by either party in the marriage, “whether economic, domestic or otherwise[,] are of equal value.”
 
 Johnson v. Johnson,
 
 877 So.2d 485, 491 (¶ 23) (Miss.
 
 *774
 
 Ct.App.2003) (quoting
 
 Hemsley,
 
 639 So.2d at 915).
 

 ¶ 11. Based on the foregoing, we find no error in the chancellor’s classification of the $23,000 in proceeds from the sale of Carey’s former residence as marital property.
 

 II. Whether the chancellor erred in classifying vehicles, shop equipment, and inventory as marital property.
 

 ¶ 12. Although the chancellor determined that Carey’s body shop business was not marital property, he did find that several vehicles associated with the business, which had no debt and a value of $11,300, were marital property and, therefore, were subject to equitable distribution.
 
 [3]
 
 Any other vehicles were disregarded as they were secured by the floor plan indebtedness. Based on the evidence in the record, the chancellor found that $75,029 in inventory was purchased during the marriage. This amount was eighty percent of the total value of the shop equipment and inventory listed on the couple’s 2003 tax return. However, based on testimony by Carey that the shop equipment and inventory were only worth $50,000 (minus $4,629 for debt), the chancellor only considered eighty percent of the $45,371 as a marital asset, which was calculated to be $36,296.80. Carey contends that the chancellor erred in considering the shop inventory and equipment as marital assets. Alternatively, he argues that even if they were properly considered as marital assets, Bessie was not entitled to equitable division of these assets as she made no contribution to the business.
 

 ¶ 13. Carey cites to Mississippi cases in which a spouse has not been awarded any interest in the other spouse’s business based on minimal contribution.
 
 See Elam v. Hinson,
 
 932 So.2d 76, 80 (¶ 15) (Miss.Ct.App.2006) (wife not entitled to a share of her husband’s business as any contributions by the wife were insignificant to the business’s operation);
 
 see also Pearson,
 
 761 So.2d at 163-64 (¶¶ 18-19) (wife not entitled to part of husband’s business owned prior to marriage, nor was she entitled to assets acquired through holding company which was part of husband’s premarital assets, as there was no showing that she contributed to business assets). There is no dispute in this case that Bessie did not actively contribute any time or money to Carey’s business. However, we note that the chancellor did not award Bessie any interest in Carey’s business. The chancellor merely awarded Bessie an equitable portion of the value of unencumbered inventory acquired for the business during their marriage. We also distinguish those cases cited by Carey as they involved the wife’s receiving alimony as part of the divorce settlement, which is not the case here.
 

 ¶ 14. Carey admits in his brief that any appreciation in value of the separate assets that occurred during the marriage may be considered marital property.
 
 See Craft v. Craft,
 
 825 So.2d 605, 609 (¶ 14) (Miss.2002) (the appreciation in value of the husband’s business interest, which was acquired prior to the marriage, should be considered a marital asset and subject to distribution). However, Carey argues that there was no evidence presented to show any comparison between the value at the time of the separation and the value prior to the marriage. Therefore, with no evidence of any appreciation in value and no showing of contribution on Bessie’s part, Carey claims that Bessie was not entitled to equitable distribution of their value. In
 
 Craft,
 
 the
 
 *775
 
 parties were unable to establish, with any degree of accuracy, how much the husband’s interest in the business had increased from the time the couple were married up until their separation. Regardless, the Mississippi Supreme Court found that even though the parties were unable to show with any accuracy how much the value of the business had increased, based on testimony, the court concluded that the wife’s “indirect contributions to the accumulation of assets [were] worth some significant amount.”
 
 Id.
 
 at 609 (¶ 15). Therefore, although there was a lack of specificity in the value presented by the evidence, the supreme court found no error in the chancellor’s finding as “fairness was the prevailing guideline in this marital division.”
 
 Id.
 
 at 610 (¶ 17) (citation omitted).
 

 ¶ 15. Carey, as the sole proprietor of the business and the one contesting the assets’ inclusion as marital property, had the burden to establish that the assets were non-marital in character, yet his testimony was very vague regarding the valuation of his business equipment and inventory. The Mississippi Supreme Court has held:
 

 The burden is upon one claiming assets to be non-marital to demonstrate to the court their non-marital character.
 
 Hemsley,
 
 639 So.2d at 915. This burden goes beyond a mere demonstration that the asset was acquired prior to marriage. Where, as here, there is a suggestion that the net equity in the assets may have increased due to the spouse/owner’s efforts, as opposed to enhanced value passively acquired, there must be a showing such as would allow the chancellor to separate the former, a marital asset, from the latter, a non-marital asset.
 
 See also Oxley v. Oxley,
 
 695 So.2d 364 (Fla. Dist. Ct.App. [4th Dist.] 1997).
 

 A & L, Inc.,
 
 747 So.2d at 839 (¶23). In the instant case, the chancellor only included items that were purchased by the sole proprietorship
 
 after
 
 Carey’s marriage to Bessie. The chancellor then gave Carey the benefit of the doubt, establishing a lower valuation' for the shop equipment and inventory, based on Carey’s testimony of $50,000, rather than what was listed in the 2003 tax returns.
 

 ¶ 16. Although the issue of any appreciation in value was not specifically addressed at trial, we conclude that the issue of appreciation of the separate property in this instance is irrelevant as the shop equipment and inventory in question were acquired during Carey and Bessie’s marriage. Any and all property that is acquired or accumulated during the marriage is defined as marital property.
 
 Bowen v. Bowen,
 
 982 So.2d 385, 395 (¶ 41) (Miss.2008). Additionally, Carey presented no evidence that the assets at issue were non-marital in character. The chancellor properly considered all applicable
 
 Ferguson
 
 factors and found that “both parties contributed directly and indirectly to the acquisition of their assets.” Specifically, he stated that Bessie provided “a significant portion of the cooking, cleaning and other household activities, and worked briefly' in Carey Stewart’s business.” Upon our review, we can find no manifest error in the chancellor’s application of the
 
 Ferguson
 
 factors and conclude that the chancellor properly included the unencumbered business inventory items in his valuation of the marital assets. Nor do we find any error in the chancellor’s valuation of said property as the distribution of the Stewarts’ marital assets was fair and equitable. Therefore, this issue is without merit.
 

 III. Whether the chancellor erred in awarding attorney’s fees to Bessie.
 

 
 *776
 
 ¶ 17. Taking into consideration the guidelines set forth by the supreme court in
 
 McKee v. McKee,
 
 418 So.2d 764, 767 (Miss.1982),
 
 [4]
 
 the chancellor awarded Bessie $7,054.10 in attorney’s fees based on her inability to pay her attorney’s fees. Carey argues that Bessie was not entitled to an award of attorney’s fees as the case did not involve contempt, nor was there any evidence that demonstrated her inability to pay her own attorney’s fees. Carey further states that the award to Bessie of $74,372.50 in equitable division of the marital property is evidence of her ability to pay the fees.
 

 ¶ 18. “An award of attorney’s fees is appropriate in a divorce case where the requesting party establishes an inability to pay.”
 
 Gray v. Gray,
 
 745 So.2d 234, 239 (¶ 26) (Miss.1999) (citations omitted). However, if “a party is financially able to pay her attorney, an award of attorney’s fees is not appropriate.”
 
 Young v. Young,
 
 796 So.2d 264, 268-69 (¶ 11) (Miss.Ct.App.2001) (quoting
 
 Martin v. Martin,
 
 566 So.2d 704, 707 (Miss.1990)). As the issue of whether to award attorney’s fees in a divorce case is a discretionary matter left to the chancellor, this Court is “reluctant to disturb” such a finding.
 
 Young,
 
 796 So.2d at 268 (¶ 11).
 

 ¶ 19. At the time of the divorce proceedings, Bessie only earned approximately $16,000 per year, and she was still supporting her daughter who was away at college. Bessie was not awarded any alimony, plus she was charged with paying monthly child support in the amount of $221. Bessie retained no rights to the marital home. The chancellor also gave Bessie title to her Mercedes automobile but made her responsible for the payments on the automobile. Taking into account all these factors, we agree with the chancellor’s finding that the payment of attorney’s fees by Bessie would “unduly deplete her equitable distribution of marital assets.” As this Court has stated, “the chancellor’s goal is to achieve equity.”
 
 Humphries v. Humphries,
 
 904 So.2d 192, 199 (¶ 24) (Miss.Ct.App.2005). Therefore, we find no abuse of discretion in the awarding of attorney’s fees to Bessie based on her inability to pay.
 

 IV. Whether Bessie should be awarded her attorney’s fees on appeal.
 

 ¶ 20. Bessie requests that this Court award her one-half of her attorney’s fees on appeal. “This Court has generally awarded attorney’s fees on appeal in the amount of one-half of what was awarded in the lower court.”
 
 Lauro v. Lauro,
 
 924 So.2d 584, 592 (¶ 33) (Miss.Ct.App.2006). The record shows that Bessie was awarded $7,054.10 in attorney’s fees by the chancellor. As we concur with the chancellor’s finding that Bessie was unable to pay her attorney’s fees due to her limited financial resources, we also award Bessie attorney’s fees on appeal in the amount of $3,527.05.
 

 CONCLUSION
 

 ¶ 21. Upon review of the record, we find no manifest error in the chancellor’s classification and equitable division of the
 
 *777
 
 Stewarts’ marital assets. The chancellor properly made findings based on the
 
 Ferguson
 
 factors, and as Bessie had minimal financial ability other than her lump-sum distribution of marital assets, he properly awarded her attorney’s fees. Therefore, we find that Carey’s assignments of error are without merit and affirm the chancellor’s findings. We also award Bessie $3,527.05 in attorney’s fees on appeal.
 

 ¶ 22. THE JUDGMENT OF THE CHANCERY COURT OF COPIAH COUNTY IS AFFIRMED. BESSIE STEWART’S MOTION FOR ATTORNEY’S FEES ON APPEAL IS GRANTED IN THE AMOUNT OF $3,527.05. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, ISHEE AND ROBERTS, JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY.
 

 [1]
 

 . Bessie has an associates degree in child development, but she was attempting to earn her bachelor’s degree at Jackson State University during her marriage to Carey. She never obtained her bachelor's degree.
 

 [2]
 

 . Testimony revealed that Carey actually paid for Bessie’s pre-marital residence as they dated for several years prior to getting married.
 

 [3]
 

 . These items were a 1996 Jeep valued at $2,000, a 1991 Chevrolet van valued at $2,000, a 1999 Ford Taurus valued at $3,000, and a 1984 Corvette valued at $4,300.
 

 [4]
 

 . The
 
 McKee
 
 court stated:
 

 In determining an appropriate amount of attorneys fees, a sum sufficient to secure one competent attorney is the criterion by which we are directed.
 
 Rees v. Rees,
 
 188 Miss. 256, 194 So. 750 (1940). The fee depends on consideration of, in addition to the relative financial ability of the parties, the skill and standing of the attorney employed, the nature of the case and novelty and difficulty of the questions at issue, as well as the degree of responsibility involved in the management of the cause, the time and labor required, the usual and customary charge in the community, and the preclusion of other employment by the attorney due to the acceptance of the case.
 

 McKee,
 
 418 So.2d at 767.