GUISEPPE, et al. *v.* COZZANI, et al.

No. 42860          January 13, 1964          159 So. 2d 278

*Oscar P. LaBarre,* Vicksburg; *George Piazza,* New Orleans, La., for appellants.

*Vollor & Thames*, Vicksburg, for appellees.

Lee, C. J.

This is the second appearance of this cause here. 238 Miss. 273, 118 So. 2d 189.

On the first trial, the bill of complaint had alleged in effect that Frank Toney died testate in Warren County on January 6, 1906; that, after certain bequests of money, the residue of his estate was bequeathed to his wife, Emma Toney, for life, with remainder, at her death, to his nephews and nieces and a sister, Lucretia, share and share alike; that the widow later married again, becoming Emma Toney Ransome, and departed this life on February 8, 1933; that thereafter O. A. Cozzani, son of Dominic Cozzani and Mary Cozzani,

upon the death of his father, Dominic, conspired with his mother, Mary, to represent to the Chancery Court of Warren County that she and her husband were the only nephews and nieces of Frank Toney, deceased, and that, following Emma's death, Mary Cozzani, as the sole heir should be placed in possession of the property; that a decree of the court to that effect was entered; that the truth was, and that such claimants knew, that the testator then had in being other nephews and neices, in fact ten, including the complainants, who survived him and his beneficiary to a life estate and were living in Italy; and that the said decree to place Mary Cozzani in possession of the real and personal property of the testate was entered because of the aforesaid fraudulent representations by the then claimant as stated.

The original bill, supplemented by the amendment thereto, also alleged that all rights to the title, interest and possession of the property became vested in them upon the death of Emma, the widow of Frank Toney, and prayed that the former decree of the court should be set aside and held invalid and void, and that the property should be vested in complainants as tenants in common.

Demurrers in each instance were sustained.

On appeal, the Court held that this was a suit in equity to have the alleged rights of the complainants recognized and adjudicated by the court and that the allegations were sufficient, as against a demurrer, to entitle them to a hearing on the merits. Hence the cause, filed on November 12, 1958, was reversed by this Court on February 22, 1960.

After remand, the trial court, on April 3, 1963, after several continuances had been granted, dismissed the cause with prejudice. However, before the adjournment of the court, the complainants moved to set aside the order of dismissal, but the same was overruled. It is

from that action by the trial court that the complainants have appealed the case at this time.

The appellants were represented in this litigation by a New Orleans attorney, who associated local counsel in the City of Vicksburg. While of course the duty devolved upon counsel for appellants to ascertain the facts to justify the allegations of the bill of complaint prior to the filing of the same, it could hardly be expected that all of the evidence would be obtained and placed in admissible form before the commencement of the action. Obviously it was a monumental task, where the evidence was to be gathered in a distant, foreign country, beyond the seas, with language difficulties, to ferret out this evidence, assemble it, have it reduced to writing and translated, and then comply with the unusual methods and forms to assure its consideration by the court.

Counsel for the appellees apparently realized that their adversaries faced a stupendous problem; and, although insistent upon a speedy trial, at the same time, they evinced a generous patience for their opponents. Counsel were not able to effect a satisfactory date for the trial during 1960, 1961 and 1962. Evidently there was a lack of rapport, especially as regards the New Orleans counsel. Associate counsel in Vicksburg was having no substantial part in the preparation for the trial, and doubtless was not aware of the magnitude of his colleague's undertaking. Meanwhile counsel for the appellees had grown threadbare because of frustrations in their efforts to terminate the litigation and secure the rights of their clients. It was in those circumstances that they finally gave notice to their opponents that they expected to demand a trial at the January 1963 term of the court. As a result of a pretrial conference between counsel for the appellees, the Vicksburg counsel for the appellants, and the trial judge, the court set the cause peremptorily for trial on April

3, 1963. Counsel for appellants, on March 29, 1963, gave notice to their adversaries of certain interrogatories to be propounded to four witnesses in the Republic of Italy, with the return date beyond April 3, 1963.

When the case was called for trial on the date set, Vicksburg counsel for appellants filed a motion for a continuance, which was overruled. Counsel also advised the court that he was not ready for trial. The court, upon insistence of opposing counsel, finally dismissed the cause. But prior to the adjournment of the court, the New Orleans counsel, after notice of the court's action, appeared before the court on April 16th and testified concerning the difficulties which he had undergone in his efforts to prepare and obtain admissible evidence.

George Piazza, New Orleans counsel, testified that he had represented the complainants who live in Italy. He explained that he was somewhat confused by the difference in practice in this state and in Louisiana; that, when he was informed about the setting of the case in April, he was under the impression that it would actually be tried about May 25th, and was disappointed when he was informed that there had been an order of dismissal; that the case involved eight different families in different parts of Italy; that, when the demurrers were sustained in the original proceeding, he had to concern himself about the law of the case and its disposition on appeal; that he could not proceed with the preparation of the facts because he was stymied until the reversal was obtained; that he sought the assistance of counsel in Italy with varying successes and attendant delays; that it was necessary to get confirmation of the relationship of his clients to the decedent; that by March 1962, he acquired a large number of certificates, consisting of forty, in book form with over one hundred pages, which he then had before the court; that they, however, followed the forms and customs of Italy, but were not in conformity with the laws of Mississippi;

that these records had to be returned with the tedious job of securing conformity with the requisites of this state; that it cost $2.50 for each of the more than three hundred certificates; that, to accomplish all of these requisites, it took nearly three years; that the records had to be translated from Italian to English and that it was difficult to get interpreters for accurate translations; that this work was not completed until the first part of January 1963; that it was then necessary to get the names of the proper witnesses to whom interrogatories could be propounded so that all of this evidence could be made admissible; that there was a vast difference between working out such matters within this state, or even the country, as compared to such matters in a far away country with wholly different languages; that he had been as diligent as the circumstances would permit; and that this requested delay was necessary in order to present the rights of his clients properly in a court of law. The witness further said that, if allowed forty-five additional days, he felt reasonably certain that his case would be ready for presentation as that would give sufficient time to have the interrogatories returned.

The witness was cross-examined at length by opposing counsel, who sought to show lack of diligence on the part of the appellants. The whole case, from its origin to the time of the hearing, was gone into in great detail. At first blush it might seem that there was lack of diligence. But, when viewed from a consideration of the whole transaction, the opposite conclusion is inevitable to accord with justice. Suffice it all to say, with the full explanation given by the witness, there was an altogether different complexion from that portrayed at the time of the dismissal.

If the proper rapport had existed, with due and timely explanation so that counsel for the appellees and the court might have been made fully aware of the difficulties with which counsel for the other side were

being confronted, very probably this legal hiatus would likely never have arisen.

■ ■ Counsel for appellees have cited a number of cases, pointing out the fact that an appellant court will not reverse the action of a trial court on the granting or refusal of a continuance except upon an abuse of discretion. It is unnecessary to enumerate these cases. They announce a general rule which may be adhered to in many cases. After all, no hard and fast rule can be laid down to cover all cases. The particular facts in a given case must control.

■ ■ It is understandable that, according to one's normal feeling, aliens should have no greater protection in their rights than citizens of the state. This is certainly true under the law. But it must be remembered, as recognized on the former appeal, that treaties made by the authority of the United States and the Republic of Italy, are superior to the constitution or laws of an individual state; and the opinion there rendered pointed out that there were two applicable treaties existing between the United States and the Republic of Italy. Besides, reference was also made therein to the second named treaty to show that it contained a provision to the effect that a nonresident alien shall be allowed a term of three years in which to sell or otherwise dispose of property, and that this term is to be reasonably prolonged if circumstances render it necessary.

■ ■ Under Section 24 of the State Constitution, right and justice are to be "administered without sale, denial, or delay". Necessary delay does not meet with condemnation; and this contemplates that not one party, but all parties shall be afforded these rights. This necessarily is embraced within the subject of the treaties above referred to.

■ ■ In view of the straightforward statement of counsel for the appellants as to the time in which the completion of all of the evidence should reasonably oc-

cur and the applicable federal as well as state laws, this Court, in view of the discretion devolving upon the trial court, is of the opinion that the requested delay should have been granted; and that the refusal to do so, under the circumstances, requires a reversal and a new trial for the consideration of the case on its merits, within such reasonable time as the circumstances shall require.

Reversed and remanded.

*Gillespie, McElroy, Jones and Brady, JJ.,* concur.