[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 297 
¶ 1. David Laneil Stuart and Karon Alice Stuart were granted an irreconcilable differences divorce by the Leake County Chancery Court. David and Karon entered into an agreement and resolved the issues of child custody, visitation, child support, and property division, leaving only the issues of alimony, attorney's fees, and several contempt motions to be decided by the chancellor. Aggrieved by the chancellors decision, David raises the following issues on appeal.
 I. WHETHER THE CHANCELLOR ERRED IN AWARDING ALIMONY.
 II. WHETHER THE CHANCELLOR ERRED IN AWARDING ATTORNEY'S FEES.
 III. WHETHER THE CHANCELLOR ERRED IN FAILING TO GRANT APPELLANT A SPEEDY TRIAL.
 IV. WHETHER THE CHANCELLOR ERRED IN FINDING APPELLANT IN ARREARS FOR NON-PAYMENT OF ONE CHILD SUPPORT PAYMENT.
 V. WHETHER THE CHANCELLOR ERRED IN GRANTING APPELLEE ONE-HALF OF APPELLANT'S THRIFT SAVINGS PLAN.
Finding only one of David's issues to have merit, we affirm in part and reverse and render in part.
 FACTS ¶ 2. David and Karon were married in 1986. The couple lived in Walnut Grove, Mississippi on property that had been in David's family for six generations. In 1988, Karon gave birth to Tanner, the Stuart's only child.
 ¶ 3. David owned a chicken farm which Karon primarily operated. Karon worked on the farm seven days a week while David worked as the maintenance foreman at the G.V. Sonny Montgomery V.A. Medical Center in Jackson. David initially paid *Page 298 
Karon only $60 per week for her work on the chicken farm, but eventually raised her salary to $75 per week. After the chicken houses were paid off in 2000, David began paying Karon $185 per week. Karen also made extra income training horses and giving riding lessons and working in a doctor's office part-time. However, Karon quit training horses and giving riding lessons due to arthritis.
 ¶ 4. Karon filed for divorce on April 4, 2001. On June 8, 2001, the chancellor entered a temporary order regarding child custody and visitation, support and maintenance, and the use and possession of marital property. On September 23, 2003, the parties filed a property settlement agreement with the court. On February 14 and 15, 2005, a hearing was held in the Leake County Chancery Court to resolve the remaining issues between the Stuarts.
 ANALYSIS I. WHETHER THE CHANCELLOR ERRED IN AWARDING ALIMONY.
 ¶ 5. This Court reviews a chancellor's findings under the familiar manifest error standard. Elam v. Hinson,932 So.2d 76, 79(1111) (Miss.Ct.App. 2006).
 ¶ 6. The chancellor applied the factors prescribed inArmstrong v. Armstrong, 618 So.2d 1278, 1280
(Miss. 1993), and made the following findings:
 ¶ 7. Income and expenses of the parties. Karon's net monthly income is $2,675.19 per month, and her monthly living expenses are $3,354.86. David's net monthly income is $3,497.38, and his monthly living expenses are $3,190.22.
 ¶ 8. Health and earning capacity of the parties.
Karon suffers from heart problems, arthritis, ulcers, and acid reflux. Karon is a high school graduate. She runs the chicken farm. Karon recently graduated from massage therapy school, and is working part-time as a massage therapist. She has previously trained horses and taught riding lessons, but due to her health she is no longer able to continue that line of work. David is in good health. He has been employed at the V.A. Hospital since 1986.
 ¶ 9. Needs of each party. The chancellor stated that he was familiar with the needs of each party based on a review of their financial statements and testimony.
 ¶ 10. Obligations and assets of each party. The parties filed a property settlement agreement with the court on September 23, 2003. Pursuant to that agreement, Karon received forty acres of land, the three chicken houses, all poultry equipment, a 1986 Subaru station wagon, and a 1993 Dodge truck. Karon has a large credit card debt. David received eighty-six acres of land and a 2001 Ford truck. David and Karon agreed to split David's Thrift Savings Plan equally. The chancellor again stated that he was familiar with the financial needs and obligations of the parties.
 ¶ 11 Length of the marriage. The Stuarts were married for eighteen years.
 ¶ 12. Presence or absence of minor children in thehome, which may require that one or both of the parties eitherpay, or personally provide, child care. The Stuarts have one minor child, Tanner, who was fifteen years old at the time of the hearing and requires no childcare.
 ¶ 13. Age of the parties. Karon is fifty-five years old, and David is fifty-two years old.
 ¶ 14. Standard of living of the parties, both duringthe marriage and at the time support is determined. The Stuarts had a nice home and enjoyed a comfortable standard of living during their marriage. After *Page 299 
the divorce, neither party will be able to maintain the same standard of living to which they were accustomed during the marriage.
 ¶ 15. Tax consequences of the spousal supportorder. Karon would be taxed on any alimony award payments, and David would receive a tax deduction for such payments.
 ¶ 16. Fault or misconduct. Although the parties agreed to an irreconcilable differences divorce, testimony was presented alleging that Karon committed adultery early in the marriage. Evidence was also presented to establish that David had an adulterous relationship in 2001.
 ¶ 17. Dissipation of assets by either party.
Within the first few months of their marriage, Karon accumulated $8,000 in credit card debt. David paid off this debt by cashing out a retirement account and a life insurance policy. Later in the marriage, Karon accumulated another $8,500 in credit card debt. However, Karon testified that the latter debt was incurred to pay for basic necessities such as food, clothing, and medical expenses.
 ¶ 18. Any other factor deemed to be just andequitable. The chancellor considered no other factors.
 ¶ 19. The chancellor's Armstrong findings were supported by the testimony of each party as well as their Rule 8.05 financial statements. Accordingly, we affirm the chancellor's award of alimony to Karon in the amount of $250 per month.
 II. WHETHER THE CHANCELLOR ERRED IN AWARDING ATTORNEY'S FEES.
 ¶ 20. An award of attorney's fees will not be disturbed unless the chancellor abused his discretion or committed manifest error. Chesney v. Chesney, 849 So.2d 860,862(119) (Miss. 2002). Generally, attorney's fees should only be awarded where the moving party has demonstrated an inability to pay. Watson v. Watson, 724 So.2d 350, 357(1129) (Miss. 1998). However, attorney's fees may also be properly awarded where one party's actions have caused the opposing party to incur additional legal fees. Chesney
at 863(1112).
 ¶ 21. The chancellor found that Karon had illustrated an inability to pay her attorney's fees of $36,646. Although Karon receives substantial sums of money from the sale of chickens, a majority of that money goes toward the payment of loans acquired to operate the business. Further, she received little or no property in the settlement agreement which can be easily liquidated. The chancellor also noted that one of David's attorneys filed a plethora of motions which he did not pursue, but which required Karon's attorney to expend a significant amount of time reviewing and discussing with his client. The chancellor found that many delays were caused because David had two attorneys, and on several occasions the court received the "runaround" where one attorney could not proceed because the other had more knowledge of the matter, but when the other attorney was contacted, he advised the court that the former should be addressed. Accordingly, we find that the chancellor was within his discretion and committed no manifest error in awarding Karon $10,000 in attorney's fees.
 III. WHETHER THE CHANCELLOR ERRED IN FAILING TO GRANT APPELLANT A SPEEDY TRIAL.
 ¶ 22. David argues that the chancellor erred in not granting him a speedy trial, the result of which caused him expenses he would not have otherwise incurred. To support his argument, David cites to the U.S. and Mississippi constitutional due process provisions and Article 3, *Page 300 
Section 24 of the Mississippi Constitution. Although David cites to these provision, he provides no analysis to illustrate how he was denied due process or access to court.
 ¶ 23. Article 3, Section 14 of the Mississippi Constitution provides, "No person shall be deprived of life, liberty, or property except by due process of law." The guarantee of procedural due process includes the right to a fair and impartial trial. Brown by Through Webb v.Blackwood, 697 So.2d 763, 769 (Miss. 1997). A due process violation occurs where a party is not allowed a full and complete hearing before being deprived of life, liberty or property. Childers v. Childers, 717 So.2d 1279,1281(118) (Miss. 1998). David was allowed a full, complete and impartial hearing. He called witnesses, was afforded the right to cross-examine, and presented documentary evidence to the court. David's due process argument is completely misplaced.
 ¶ 24. Article 3, Section 24 of the Mississippi Constitution provides, "All courts shall be open; and every person for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law, and right and justice shall be administered without sale, denial, or delay." Necessary delay does not violate the constitutional prohibition against delayed justice. Warren v. Miss.Workers' Compensation Comm'n, 700 So.2d 608, 616(1134) (Miss. 1997) (citing Guiseppe v. Cozzani 248 Miss. 588,594, 159 So.2d 278, 281 (Miss. 1964)). The record provides several reasons which necessitated delay: one of David's attorneys was injured in an automobile accident; Karon was hospitalized for chest pains shortly before the case was reset for trial; the parties jointly agreed to reset the trial for a fourth time in order to reach a property settlement agreement and narrow the issues to be decided at trial; Karon was injured in an automobile accident one week before the next scheduled hearing; and one of David's attorneys was hospitalized on the date of the next scheduled hearing. Not only were the delays necessary, but they were also caused as much by David as Karon.
 ¶ 25. Finally, we note that the constitutional guarantee to a speedy trial extends only to criminal defendants. U.S. Const. amend. VI, Miss. Const. art. Ill, § 26. Clearly, David is not a criminal defendant, and this argument is not only devoid of merit, but is absolutely frivolous. While the timely resolution of divorce cases is a desirable objective, it is not an affirmative right for which relief may be granted.
 IV. WHETHER THE CHANCELLOR ERRED IN FINDING APPELLANT IN ARREARS FOR NON-PAYMENT OF ONE CHILD SUPPORT PAYMENT.
 ¶ 26. Prior to trial, David was ordered to pay temporary child support in the amount of $212.50 on the first and fifteenth of every month. At trial Karen testified that in April of 2003, David had missed two payments, but sent one of them later. David testified that he had only been late on one payment in April of 2003 because the post office sent the check back to him, which he in turn sent back to Karon.
 ¶ 27. The chancellor's order erroneously stated that David failed to provide the court with proof of payment for each child support statement. David submitted exhibit number 84 into evidence which was a spreadsheet in which he listed the dates and check numbers of each child support payment he sent to Karon. David also submitted exhibit number 85 into evidence which included his bank statements from April 2001 to November 2004, which show *Page 301 
all of the corresponding checks from his child support payment spreadsheet and the dates which they were presented for payment. After examining David's spreadsheet and bank statements we find that David did, in fact, make each ordered payment and presented substantial credible evidence to prove the same. We reverse and render this issue.
 V. WHETHER THE CHANCELLOR ERRED IN GRANTING APPELLEE ONE-HALF OF APPELLANT'S THRIFT SAVINGS PLAN.
 ¶ 28. David argues on appeal that the chancellor failed to determine the marital assets of the parties. He further argues that his Thrift Savings Plan is his non-marital property. However, on September 23, 2003, David and Karon executed a property settlement agreement. One of the provisions of the agreement stated that each party will receive one-half of David's Thrift Savings Plan as of the date of the separation. Both parties and their attorneys signed the agreement which was filed in the chancery court that day. The chancellor incorporated the agreement in the final judgment.
 ¶ 29. Property settlement agreements which have been approved by the court and incorporated in the judgment of divorce are treated like any other legally binding contract.West v. West, 891 So.2d 203, 210(1113) (Miss. 2004) (citing In re Estate of Hodges, 807 So.2d 438,445(1126) (Miss. 2002)). David did not raise any valid defense to the enforcement of the contract before the chancellor, nor has he presented this Court with such an argument. Rather, he claims that the chancellor failed to independently perform an equitable distribution, even though the division of marital property had already been agreed upon prior to the hearing. This issue is without merit.
 ¶ 30. THE JUDGMENT OF DIVORCE ENTERED BY THE LEAKECOUNTY CHANCERY COURT IS AFFIRMED. HOWEVER, THAT PORTION OF THEJUDGMENT FINDING DAVID LANEIL STUART IN ARREARS ON CHILDSUPPORT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL AREASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.