MYERS, P.J.,
 

 for the Court.
 

 ¶ 1. David Laneil Stuart appeals an order of the Leake County Chancery Court on a “Motion ... for Contempt ... or ... to Enforce” a previously entered divorce judgment. The chancellor ordered David to execute a quitclaim deed transferring his interest in a forty-acre tract of land to his ex-wife, Karon Alice Stuart. David appeals that judgment, arguing that the chancellor’s order amounted to a modification of the divorce judgment. Finding no error, we affirm.
 

 FACTS
 

 ¶ 2. David and Karon were granted an irreconcilable differences divorce on April
 
 *803
 
 11, 2005, and that judgment of divorce was largely affirmed by this Court. Our opinion was handed down on October 17, 2006, and a mandate followed on May 31, 2007.
 
 [1]
 

 See Stuart v. Stuart,
 
 956 So.2d 295 (Miss.Ct.App.2006). There, we described the events surrounding the divorce as follows:
 

 David and Karon were married in 1986. The couple lived in Walnut Grove, Mississippi on property that had been in David’s family for six generations. In 1988, Karon gave birth to Tanner, the Stuart’s only child.
 

 David owned a chicken farm which Karon primarily operated. Karon worked on the farm seven days a week while David worked as the maintenance foreman at the G.V. Sonny Montgomery V.A. Medical Center in Jackson. David initially paid Karon only $60 per week for her work on the chicken farm, but eventually raised her salary to $75 per week. After the chicken houses were paid off in 2000, David began paying Karon $185 per week. Karen [sic] also made extra income training horses and giving riding lessons and working in a doctor’s office part-time. However, Ka-ron quit training horses and giving riding lessons due to arthritis.
 

 Id.
 
 at 297-98 (¶¶ 2-3).
 

 ¶ 3. A property settlement agreement between the parties was filed on September 23, 2003, and later incorporated into the final judgment of divorce. It provided, in pertinent part, that:
 

 [Karon] and [David] agree to the following matters concerning their property: 1. [Karon] shall have the exclusive use, control, and possession of the [fjorty (40) acres of land and the three chicken houses (including any and all profits thereon), located on said forty acres, all poultry equipment; 1986 Subaru station wagon, and 1993 Dodge truck. The forty acres shall be in the form of an [sic] tract with no less than 800 feet of frontage on the public road, located in the Northwest corner of the subject property (the 126[-]acre tract), with the understanding that said forty acres shall have located thereon said three chicken houses.
 

 2. [David] shall have the exclusive use, control, and possession of the following items, to-wit:
 

 Eighty-six acres of land, subject to the terms of paragraph No. 1 above; 2001 Ford pickup, Maple stool bed, Maple desk, [and approximately thirty other enumerated pieces of household property].
 

 [[Image here]]
 

 The property settlement agreement also enumerated additional items of personal property, as well as a mobile home used as the marital domicile, which were to be sold at auction with the proceeds to be split evenly between the parties.
 

 ¶ 4. On August 26, 2004, the chancellor entered an “Order for Survey, Execution of Deed, Sale of Personal Property, Etc.” The order provided that the parties would commission a survey to divide the real property pursuant to the property settlement agreement. Following the conclusion of the survey, the order provided that David “shall sign, execute and deliver to [Karon] a good and sufficient Quitclaim Deed, wherein he conveys unto her all of his right, title and interest in and to the real property that is her separate property under the terms of [the property settlement agreement.]” Karon was likewise ordered to quitclaim all of her interests in
 
 *804
 
 David’s portion of the real property at issue.
 

 ¶ 5. On March 18, 2005, the chancellor entered a “Final Judgment” granting the parties a divorce. It incorporated the previously filed property settlement agreement and reiterated the previous order’s requirement that each of the parties pay one-half of the cost of the land survey. David’s first appeal was from that judgment.
 

 ¶ 6. Following the resolution of the first appeal, Karon filed the “Motion to Enforce the Order for Survey, Execution of Deed, Sale of Personal Property, Etc.” that is the subject of this appeal. After a brief hearing, the chancellor found that David had not complied with the August 2004 order, and on April 2, 2008, she ordered David to sign the quitclaim deed as required by the August 23, 2004, order. It is from this order that David appeals.
 

 STANDARD OF REVIEW
 

 ¶ 7. In reviewing the judgment of a chancery court, an appellate court “will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, applied an erroneous legal standard, was manifestly wrong, or was clearly erroneous.”
 
 Hamilton v. Hopkins,
 
 834 So.2d 695, 699(¶ 12) (Miss.2003) (citations omitted). Additionally, where the chancellor has made no specific findings, we will proceed on the assumption that he resolved all such fact issues in favor of the appellee.
 
 Newsom v. Newsom,
 
 557 So.2d 511, 514 (Miss.1990). A chancellor’s interpretation and application of the law, however, is reviewed de novo.
 
 Tucker v. Prisock,
 
 791 So.2d 190, 192(¶ 10) (Miss.2001).
 

 WHETHER THE CHANCELLOR ERRED IN ORDERING DAVID TO EXECUTE THE QUITCLAIM DEED.
 

 ¶ 8. On appeal, David argues that the chancellor’s order, requiring him to transfer title to the subject real property to Karon, amounted to a modification of the property settlement agreement. In particular, he asserts that the language used in the property settlement — that “[Karon] shall have the exclusive use, control, and possession of the [real property]” — conveys to her only a lesser posses-sory interest and allows him to retain ownership of the subject property.
 

 ¶ 9. We find this issue barred by res judicata. The supreme court has stated: “A final judgment on the merits of an action precludes the parties and their privies from relitigating claims that were or could have been raised in that action. We have labeled this rule res judicata.”
 
 Walton v. Bourgeois,
 
 512 So.2d 698, 700 (Miss.1987). The supreme court has also held that “the rule [of res judicata] is often broadly stated in general terms that a judgment is conclusive not only on the questions actually contested and determined, but on all matters which might have been litigated and determined in that suit.”
 
 Pray v. Hewitt,
 
 254 Miss. 20, 24, 179 So.2d 842, 844 (1965) (quoting 50 C.J.S.
 
 Judgments
 
 § 716 (1947)).
 

 ¶ 10. In reviewing the record, we find that this issue could have been raised on direct appeal from the judgment of divorce. The “Order for Survey, Execution of Deed, Sale of Personal Property, Etc.” was filed on August 26, 2004, more than six months prior to the entry of the divorce judgment from which David’s first appeal was taken. Because David failed to raise this issue in his prior appeal, he may not now attack that judgment.
 
 See Childers v. Childers,
 
 717 So.2d 1279, 1280-81(¶ 6) (Miss.1998).
 

 ¶ 11. As David does not otherwise challenge the chancellor’s finding of contempt, we affirm the chancellor’s order.
 

 
 *805
 
 ¶ 12. THE JUDGMENT OF THE CHANCERY COURT OF LEAKE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE, P.J., GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. IRVING, J., CONCURS IN PART AND IN THE RESULT.
 

 [1]
 

 . We did, however, reverse and render on one issue, finding that the chancellor erroneously ordered payment of a child support arrearage totaling $212.50.
 
 Id.
 
 at 300-01 (¶¶ 26-27).