# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-01371-COA

RAVEN YOUNG KREPS                                                    APPELLANT

v.

ADAM HYLAND                                                          APPELLEE

DATE OF JUDGMENT:              08/01/2019
TRIAL JUDGE:                   HON. JOHN C. McLAURIN JR.
COURT FROM WHICH APPEALED:     RANKIN COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:       D. STERLING KIDD
                               MICHAEL REID JONES
ATTORNEY FOR APPELLEE:         JON HEATH POWELL
NATURE OF THE CASE:            CIVIL - CUSTODY
DISPOSITION:                   REVERSED AND REMANDED - 11/16/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE WILSON, P.J., McDONALD, LAWRENCE AND EMFINGER, JJ.

### LAWRENCE, J., FOR THE COURT:

¶1.     Raven Kreps appeals from the Rankin County Chancery Court's judgment awarding her ex-boyfriend Adam Hyland custody of their nine-year-old daughter M.H.[1]  On appeal, Raven first argues that the chancery court erred in denying her motion for continuance made on the day of trial so that she could seek counsel.  Second, she argues that the court violated her due process rights by conducting a legal proceeding in her absence after a municipal officer arrested her for an unrelated misdemeanor matter on the first day of trial.  Finally, she argues that the chancery court violated her due process rights in awarding Adam custody

---

[1] We use initials to protect the minor's identity.

because Adam did not specifically plea that he was seeking custody in his petition and did not amend his petition to seek custody until the close of the hearing. After review, we find that the trial court violated Raven's due process rights by conducting the legal proceeding in her absence. Accordingly, we reverse the trial court's custody award and remand for proceedings consistent with this opinion.[2]

## FACTS

¶2. Raven and Adam were never married but have one child together, M.H., born in 2009. The couple separated around 2014, and M.H. continued to live with Raven. On June 10, 2015, Raven filed a petition to terminate Adam's parental rights. In that petition, she claimed that after a "diligent search and inquiry," Adam's whereabouts were unknown. Thus, Raven requested that summons by publication be issued and published in order to effectuate service of process. In the petition, Raven claimed that Adam had not made contact with M.H. since January 2014 "either in person, through written or verbal communication[,] or otherwise." A summons by publication was issued, and Adam did not respond to the petition. As a result, the chancery court granted Raven's petition and terminated Adam's parental rights.

¶3. On April 18, 2019, Adam filed a petition for relief from that judgment and requested visitation with M.H. As part of that petition, Adam claimed that Raven was dishonest about her efforts to locate him in 2015. More specifically, he claimed that "Raven knew/has known [my] whereabouts and could have contacted and located [me] without exercising even the slightest of diligence." Adam attached an affidavit from Raven's brother and Raven's

_____

[2] Because we find the second issue dispositive, we need not address Raven's other issues raised on appeal.

2

brother's wife, who both testified that in 2015 Raven knew how to contact Adam and could have easily done so. Adam also requested "other relief, both general and specific and equitable, as he may be entitled in the premises."

¶4. The chancery court held a hearing on July 29, 2019. At the beginning of the hearing, Raven stated that she had an attorney representing her, but he was not present because he had another case in the courthouse that same day. She further stated that she "got the summons in May, so it took me until last week to make the money to get an attorney. I met with him on Thursday. . . ."[3] The court noted that the attorney had not entered an appearance or filed a motion for continuance. At that point, someone left the courtroom and located the attorney. The attorney appeared before the judge and stated that he had "a good conversation" with Raven on Thursday, but she had not retained him as counsel, and they had no attorney-client relationship. He explained that he knew he was unavailable the day of the hearing, so he recommended she contact another attorney in the meantime. After the attorney was excused, Raven pleaded with the judge to continue the case, stating that she "was under the impression that [the attorney] was going to help her with this case; I know that you think that three months is a long time, but I am a single mom of three girls so I have been saving money to get an attorney, but . . . I wouldn't say it's easy to come up with a couple thousand dollars extra every month . . . ." Ultimately, the court denied Raven's motion to continue based on the fact that she had been served nearly three months prior and "waited until the last minute to even begin to talk to any attorney." The court informed Raven that she could represent

[3] July 29, 2019, was a Monday (the date the case was set for trial on the issues of termination of parental rights and visitation).

herself. The record shows that instead of proceeding with Raven and Adam's hearing at that point, the court heard another case first but instructed the parties to wait and would return to their case upon completion of the other legal matter. Sometime during the first unrelated hearing and before Adam and Raven's hearing, an officer from the Brandon Police Department came to the courthouse and arrested Raven.

¶5.    Raven and Adam's hearing began later that day when the court called the case. The court was notified that Raven had been arrested by Brandon police and was no longer present in the courthouse. Adam's attorney stated that the warrant officer told him that Raven had failed to appear in court at least once for "driving with a suspending license."[4] Adam's attorney also stated that he heard a Rankin County sheriff's deputy ask the arresting officer to inform the deputy if Raven was released from jail. Adam's attorney saw the officer place Raven in the patrol car and assumed she was taken to the Brandon Police Department. Finally, Adam's attorney stated that he wanted to proceed with the hearing. The court stated it was "inclined to do so." The court further stated:

> **The Court:** It's not—I mean, I want to protect the rights of Ms. Kreps, but I also have an obligation to protect the rights of Mr. Hyland and, you know, if in balancing all that out, it's not the court's fault that she was standing or found herself in the position that she's in this morning. And I don't want to prejudge her, but, you know, she did not respond to whatever it is—tickets, or whatever it is, just like she didn't respond to this case. And, you know, if you're served with a summons or you're served with a warrant or whatever, it's incumbent upon you to do something about it and not bury your head in the sand and think it's going to go away, because it doesn't. And that may be the lesson for today. **But in any event, I'm going to proceed . . . to a hearing**

---

[4] Raven later admitted during cross-examination that she had three outstanding warrants for driving with a suspended license. She also testified that she had owed at least $1,500 in fines.

**and adjudication and if Ms. Kreps comes back, I will allow her to assist or participate in her defense as a self-represented litigant in whatever capacity she desires to do so.**

(Emphasis added).

¶6. The court proceeded with the hearing. Raven was still in jail. Before Adam called his first witness, the court asked Adam's attorney if he wanted Rule 615 of the Mississippi Rules of Evidence (commonly referred to as "the Rule") invoked, mandating that the potential witnesses be sequestered from the courtroom. His attorney responded, "since [Raven] is not here, I think out of an abundance of caution and for full fairness . . . it's only fair to her." As a result, the court invoked "the Rule" and asked all nonparty witnesses to leave the courtroom. Then, the court specifically asked if there were any witnesses still in the courtroom that had been "designated or supporting or called by [Raven] in any way." Based on the reading of the transcript, no one remaining in the courtroom indicated they planned to testify in Raven's behalf.

¶7. Four witnesses testified before Raven returned to the courtroom that day: James Young, Kwana Young, Deborah Foreman, and Douglas Hyland. Raven was not present to hear, rebut, or cross-examine any of those four witnesses. Adam (the fifth witness) was testifying when Raven was able to return to the courtroom. When Raven returned, the court stopped the proceedings and stated, "I'm going to allow you to participate from henceforward." Further, Raven told the court that she had three witnesses she planned to call. When she provided the judge with the three names, he responded that at least two of

5

those potential witnesses knew the Rule had been invoked and did not leave the courtroom.[5]

As a result, he precluded them from testifying.[6]

¶8.    During Adam's direct examination, while Raven was present, he specifically requested custody of M.H., despite only asking for visitation in his petition:

> Q.    What do you feel would be in the best interest of [M.H.] with regards to who should have physical custody of [M.H.]?
>
> A.    I feel the best regards would be myself.
>
> Q.    Are you asking this court to grant you physical custody?
>
> A.    Yes, sir, I am.

Since Raven returned during Adam's testimony, the court allowed her to conduct the cross-examination of Adam. After Adam testified, his attorney called Raven as an adverse witness. Raven was the only one to testify on her behalf due to her other witnesses being excluded for violating the Rule. At the close of the hearing, Adam's attorney made an ore tenus motion to amend the pleadings to conform with the evidence. More specifically, he sought to amend the pleadings to include a request that the court grant Adam sole legal and physical custody of M.H. Without any objection from Raven, the court responded, "All right." The court then conducted a thorough *Albright*[7] analysis. Ultimately, the court determined it would be in M.H.'s best interest for Adam to have sole legal and physical custody. The court awarded

---

[5] Raven was not present when the Rule was invoked and therefore could not instruct or request the Court to instruct her potential witnesses to leave the courtroom.

[6] The record is unclear as to why the third witness was not allowed to testify. Either way, Raven was the only witness to testify on her behalf.

[7] *Albright v. Albright*, 437 So. 2d 1003 (Miss. 1983).

Raven "standard visitation rights," which included every other weekend, five weeks during the summer, and specified holidays during even and odd years. The court acknowledged that M.H. would be moving to DeRidder, Louisiana, to live with her father and that although DeRidder was five hours away from Raven, that was "not the court's fault." The court also ordered that Raven be solely responsible for traveling to and from Louisiana to pick up and return M.H. during her visitation periods.

¶9. At the end of the hearing, the chancellor arranged for M.H.'s older sister to go to Madison, Mississippi, to pick up M.H. and take her to Adam in Flowood, Mississippi. Because Raven had to return to jail immediately after the hearing, she was unable to go with her older daughter to pick up M.H. and did not have the opportunity to say goodbye to M.H. Aggrieved by the chancery court's custody decision, Raven appealed.

**ANALYSIS**

¶10. Raven argues that she was deprived of due process when the court conducted the hearing in her absence as a result of her being arrested for a misdemeanor charge. The Due Process Clause of the Fourteenth Amendment firmly prohibits any state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV; *accord* Miss. Const. art. 3, § 14. For nearly one hundred years, the United States Supreme Court has recognized that a parent's liberty interests in the care, upbringing, and custody of children are protected by the Due Process Clause of the Fourteenth Amendment. *See, e.g.*, *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997); *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *Parham v. J.R.*, 442 U.S. 584, 602, (1979); *Quilloin v. Walcott*, 434 U.S. 246, 255

7

(1978); *Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Pierce v. Society of the Sisters*, 268 U.S. 510, 535 (1925); *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923). In fact, "[t]he liberty interest [in] the interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel v. Granville*, 530 U.S. 57, 65 (2000).

¶11. "The guarantee of procedural due process includes the right to a fair and impartial trial." *Stuart v. Stuart*, 956 So. 2d 295, 300 (¶23) (Miss. Ct. App. 2006) (citing *Brown ex rel. Webb v. Blackwood*, 697 So. 2d 763, 769 (Miss. 1997)). In *Weeks v. Weeks*, 556 So. 2d 348, 349 (Miss. 1990), the Mississippi Supreme Court reversed and remanded on a due process violation "because the record disclose[d] that there were important, material, and pertinent facts and available witnesses which should have been heard." (Citing *In re Prine's Est.*, 208 So. 2d 187, 192 (Miss. 1968)). The *Weeks* case involved a woman seeking to hold her ex-husband in contempt for failing to pay her an unspecified amount stated in a final judgment of divorce. *Id.* At the end of the hearing, the chancellor found the ex-husband in contempt. *Id.* The ex-husband filed a motion for a new trial, and, although, the chancellor held a hearing on the motion, the chancellor refused to allow the ex-husband the opportunity to present witnesses to support his motion. *Id.* The ex-husband claimed those witnesses would have testified that he had in fact paid his ex-wife the money stated in the final judgment of divorce. *Id.* "[T]he Chancellor shut off [his] proof, saying that he was satisfied that the defendant was in contempt." *Id.* In reversing and remanding the case, the supreme court emphasized the due process implications that arise when denying a defendant or respondent

8

the opportunity to present evidence or call witnesses during a legal proceeding:

> Every defendant or respondent has the right to notice in a court proceeding concerning him and to be present and to introduce evidence at the hearing. *Edwards v. James*, 453 So. 2d 684 (Miss. 1984). The parties should be afforded a full, complete hearing at which the parties have an opportunity to call witnesses in their behalf and be heard by themselves or counsel. *Fortenberry v. Fortenberry*, 338 So. 2d 806 (Miss. 1976). If a full and complete hearing is not allowed by refusing the defendant his opportunity to present evidence, then the defendant is thereby deprived of due process. *Id*.[8]

*Id*. at 349-350.

¶12. In regard to child-custody cases, this Court has made clear the chancellor's benefits in hearing from both parents: "[c]ertainly, a more prudent determination . . . may be made when based upon **evidence presented from both parents** rather than evidence presented by only one." In *Wade v. Wade*, 967 So. 2d 682, 684 (¶8) (Miss. Ct. App. 2007), this Court held "Where a chancellor has the opportunity to consider the argument of **both parents**, the facts and circumstances affecting his determination are presumably more fully developed."

---

[8] In the criminal context, the decision to try a felony defendant in absentia is within the discretion of the circuit court. This discretion is limited by the fact that a person accused of a felony has a constitutional right to be present at trial. *Wales v. State*, 73 So. 3d 1113, 1120 (¶17) (Miss. 2011) (citing U.S. Const. amend. VI; Miss. Const. art. 3, § 26). The Mississippi Supreme Court has held that "a defendant's willful, voluntary, and deliberate actions in avoiding trial constituted a waiver." *Id*. (citing *Jefferson v. State*, 807 So. 2d 1222, 1227 (Miss. 2002)). Further, Mississippi Code Annotated section 99-17-9 (Rev. 2020) reads as follows:

> In criminal cases the presence of the prisoner may be waived (a) if the defendant is in custody and consenting thereto, or (b) is on recognizance or bail, has been arrested and escaped, or has been notified in writing by the proper officer of the pendency of the indictment against him, and resisted or fled, or refused to be taken, or is in any way in default for nonappearance, the trial may progress at the discretion of the court, and judgment made final and sentence awarded as though such defendant were personally present in court.

(Emphasis added).

¶13.    This Court dealt with a similar issue in *Singleton v. Buford*, 282 So. 3d 493, 495 (¶1) (Miss. Ct. App. 2019), where a mother lost legal and physical custody of her three-year-old son after she and her attorney failed to appear at the custody hearing.  The attorney had calendared the wrong date and given that wrong date to the mother, which is why neither was present on the day of the hearing.  *Id*. at (¶2).  As soon as the mother's attorney realized the mistake, she sought a continuance, "but it was too late."  *Id*.  After the chancellor issued a bench ruling, the mother filed a motion for reconsideration before the actual judgment was entered, but the court denied her motion.  *Id*.  The mother's motion for a new trial or reconsideration was also denied.  *Id*.  On appeal, this Court reversed the custody award and found that the chancery court abused its discretion by denying the mother's motion for a new trial or reconsideration.  *Id*. at 499 (¶21).  In doing so, this Court reasoned:

> There was no **persuasive reason** not to allow Singleton to present evidence and provide the court with additional information relevant to the custody determination.  Allowing her to present evidence would have allowed the chancellor to make a more informed decision, thereby ensuring a higher degree of certainty that the best interest of the child is met.

*Id*. at (¶19) (internal quotations marks omitted) (emphasis added).

¶14.    Similarly here, there was no "persuasive reason" to conduct the proceeding in Raven's absence.  She was arrested on an unrelated misdemeanor matter when she was literally at the courthouse to conduct a trial on Adam's petition, which had been filed against her.  Before she returned, four witnesses testified fully, and not only had she missed the opportunity to hear those four witnesses' testimony, she was prohibited from cross-examining them.  It is

important to note that Raven did not have an attorney present on her behalf. The trial court knew that because at the beginning of the hearing, before she was arrested, Raven had asked for a continuance so that she would have more time to obtain counsel. In addition, when she returned, Raven discovered that she would not be allowed to present evidence, as her witnesses were precluded from testifying when the Rule was invoked in her absence. Neither Raven nor an attorney was present on her behalf when the Rule was invoked to ensure her witnesses were removed from the courtroom. In essence, this cascading series of events began when the executive branch of the government decided to arrest Raven on an unrelated misdemeanor charge, when she was present at a trial being conducted by the judicial branch of government. This prevented Raven from being present at her trial, hearing testimony, cross-examining witnesses, and calling witnesses in her own behalf. This cascading series of events and consequences led to an incomplete hearing with undeveloped facts that did not serve the best interest of M.H. and undoubtedly impacted Raven's chance to keep custody of her child. *See Wade*, 967 So. 2d at 684 (¶8). After review, we find that Raven's due process rights were clearly violated when the judge allowed the hearing concerning her daughter to be conducted in her forced absence by her arrest for an unrelated misdemeanor charge while she was literally awaiting her hearing in the courthouse. Accordingly, we reverse the trial court's custody award and remand for proceedings consistent with this opinion.

¶15.    **REVERSED AND REMANDED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**